(No. 65431.— ▮▮▮▮▮▮▮▮▮▮▮)

*In re* WALTER M. KETCHUM, Attorney, Respondent.

*Opinion filed June 20, 1988.—Rehearing
denied October 3, 1988.*

James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Martin, Ltd., of Oak Park, for respondent.

Malcolm C. Rich, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

PER CURIAM: Richard LeFevour, then presiding judge of the first municipal district of the circuit court of Cook County, was indicted in 1984 on charges of mail fraud, tax fraud, and racketeering. During the course of

his trial, the government introduced evidence of certain financial transactions between LeFevour and Walter M. Ketchum, the respondent in this case. LeFevour was convicted in 1985 and sentenced to a term of imprisonment. In the wake of LeFevour's conviction, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a two-count complaint charging the respondent with violations of Rules 1—102(a)(2), 1—102(a)(5), and 7—110(a) and Canon 9 of the Illinois Code of Professional Responsibility (107 Ill. 2d Rules 1— 102(a)(2), (a)(5), 7—110(a), 9—101 *et seq.*). After a hearing on the matter, in 1986 the hearing panel concluded that respondent had violated Rule 7—110(a) and recommended that respondent be censured. Both respondent and the Administrator appealed to the Review Board, and in 1987 the Review Board agreed with the hearing panel that respondent had violated Rule 7—110(a), but recommended a one-year suspension. On June 24, 1987, this court granted respondent leave to file briefs and present oral argument. The issue in this court is whether respondent's conduct in making loans to and soliciting loans for LeFevour or his mother violated Rule 7—110(a) and, if so, what sanctions are appropriate. Rule 7— 110(a) provides in pertinent part that an attorney "shall not give or lend anything of value to a judge."

Respondent was a long-time friend and neighbor of LeFevour, whose residence was across the alley from respondent's. Their families were extremely friendly and their children grew up together, went to school together, and played together. Before LeFevour became a judge, he sometimes referred personal injury cases to respondent, and respondent sometimes referred criminal cases to LeFevour while LeFevour was still in private practice. LeFevour continued to refer personal injury cases to respondent after LeFevour became a judge in the traffic court in 1968, but the Administrator did not

charge wrongdoing on this account. In testimony before the hearing panel, respondent described LeFevour as a good source of business. LeFevour was named presiding judge of the first municipal district in 1981. During the period in question in this case, a large number of respondent's personal injury cases were pending in that district—at times as many as 50% of the cases he had on file.

Before LeFevour became a judge, respondent made loans to him from time to time. These loans were always repaid by LeFevour. After LeFevour became a judge, respondent continued to loan him money. These loans followed the same pattern: LeFevour would ask for a loan, whereupon respondent would write LeFevour a check from his business account. The loans were always interest-free, were never evidenced by a note, and times for repayment were never discussed. Respondent recalls neither the circumstances surrounding these loans nor the reasons LeFevour needed the loans. None of these loans, with the possible exception of the first one, were repaid by LeFevour.

The first loan, for either $1,000 or $2,000 (respondent cannot recall which), was made sometime after LeFevour became a judge but before February 1978. Although he cannot recall the circumstances, he claims that LeFevour repaid the loan. Between February 1978 and September 1982, respondent made five additional loans to LeFevour, totalling $5,300. Four of these loans, totalling $4,300, were made after LeFevour became the presiding judge of the first municipal district. None of these loans were repaid.

Respondent claims that four of the five loans made between 1978 and 1981 were advances on account of a tort action in which the respondent represented LeFevour's wife, his two sons, and two other individuals not related to LeFevour. A review of the respondent's office

records indicates that these payments to LeFevour, contrary to respondent's assertion, were not advances. Where monies were loaned by the respondent to his clients, the loans were recorded in cost ledger sheets kept by respondent's office in the regular course of business. We note, however, that the Administrator brought no charges against the respondent with respect to such loans. For the purpose of this proceeding, it is significant that there were no entries of any advances or loans on the cost ledger sheets which referred to LeFevour or the tort action the respondent was handling for the LeFevour family.

Respondent made two more loans to LeFevour in December 1981. On December 21, 1981, LeFevour called respondent and told him that his mother, Evelyn, with whom the respondent was acquainted, was hospitalized. Because of a dispute with his mother's insurance carrier, LeFevour needed to raise $10,000 to pay the hospital bill so that she could be released to spend the Christmas holiday at home and yet be readmitted to the hospital shortly thereafter if she required further hospitalization.

Although respondent had sufficient funds to loan LeFevour the amount requested, he responded to LeFevour that he was not able to make the loan. Instead he volunteered to contact other attorneys, using Judge LeFevour's name to request that they contribute to a fund to pay the hospital bill. LeFevour consented to the respondent's suggestion. Although the respondent did not tell LeFevour the names of specific individuals he would solicit, he told LeFevour he would call attorneys.

That same day the respondent spoke to six Chicago attorneys and asked each to contribute $1,000 to the hospital bill. One attorney refused outright, and later another attorney informed the respondent that he would not contribute because his wife objected. The other four attorneys each delivered checks to respondent in the

amount of $1,000 payable to Richard LeFevour, the way in which the respondent told them he was making his own check payable. The respondent then wrote his own check payable to Richard LeFevour in the amount of $1,000 and delivered the five checks to LeFevour's bailiff. None of these loans were secured by notes, nor were provisions for repayment made.

LeFevour cashed respondent's $1,000 check. He deposited the other four checks in his personal checking account and within the next four weeks LeFevour expended these funds for a variety of purposes, but not for payment of his mother's hospital bill.

On December 24, 1981, LeFevour requested $1,000 more from the respondent, which respondent loaned LeFevour interest-free and without a note by a check from his business account. Finally, respondent made a similar $1,000 loan to LeFevour in September of 1982. None of these loans were repaid.

In sum, in the time that LeFevour was a judge, respondent made LeFevour at least nine loans totalling at least $9,300. Only two loans, totalling either $2,000 or $3,000, were made in the 13 years LeFevour served as a judge in the traffic court. The loans increased in frequency after LeFevour became presiding judge of the first municipal district: seven loans, totalling $7,300, were made in the 20-month period after LeFevour became presiding judge.

The first count of the complaint filed by the Administrator against respondent relates to the loans made by respondent to LeFevour both before and after he became the presiding judge of the first municipal district. The second count relates to the respondent's solicitation of other attorneys to contribute funds for payment of Evelyn LeFevour's hospital bill. As previously noted, only alleged violations of Rule 7—110(a) are before this court.

The hearing panel, in reviewing the respondent's conduct, found that although the evidence supported a conclusion that the respondent did not make loans to LeFevour with an intent to influence or obtain judicial favor, several factors necessitated sanctions against respondent. Among other things, the panel found that respondent was an experienced practitioner who admitted being aware of Rule 7—110(a) at the time the loans to LeFevour were made. The panel noted that respondent had more than a social relationship with LeFevour, because LeFevour referred business to him. Also, the panel found that respondent's contention that his payments to LeFevour represented advances toward recovery in a personal injury case rather than outright loans was not "candid and forthright," and that LeFevour never repaid nor did respondent make any effort to collect the loans. Therefore, the panel concluded that respondent had violated Rule 7—110(a) and recommended that the respondent be censured.

The Review Board agreed that the respondent had violated Rule 7—110(a). In arriving at its decision, the Review Board stressed the vital function of Rule 7—110 in our system of justice, noting that the rule is designed "to preserve and protect the integrity of our Judicial System and to preserve and maintain an independent and impartial Judiciary. The practice of attorneys making loans to sitting judges erodes and destroys the confidence of the public in the Bar, the Judiciary, the entire legal system."

The Board interpreted 7—110(a) as a *per se* rule—an absolute prohibition against lending or giving anything of value to a judge (except, of course, campaign contributions permitted by Rule 7—110(a)) regardless of the purpose of the gift or loan, or whether the attorney benefitted or anticipated gaining any benefit from his gift or loan. The Board acknowledged that LeFevour and the

respondent were long-time friends, but concluded that "[w]hat may well have begun with innocuous loans between friends struggling to begin practices developed into a festering sore whose infection spread and engulfed numerous other attorneys." Because respondent's action "was not one single isolated incident" but a "calculated, continuing wrong and a blot upon our profession and our system of Justice," the Review Board felt that censure was too light a sanction, and recommended a year-long suspension from the practice of law.

In this court, the Administrator argues that Rule 7—110(a) is a *per se* rule and therefore that each of the loans the respondent made to LeFevour, as well as the respondent's solicitation of loans from other attorneys on LeFevour's behalf to raise money to pay LeFevour's mother's hospital bill, constitutes a disciplinary violation without regard to whether the respondent received any benefit from his conduct. The Administrator asks that the respondent be suspended from the practice of law for a substantial period of time. Respondent argues that 7—110(a) is not a *per se* rule and that his actions were never motivated by a desire to influence the administration of justice or curry judicial favor, but solely by his friendship and desire to help the LeFevour family in their times of need.

Although the issue raised here by the parties is whether Rule 7—110(a) is a *per se* rule, our opinion in *In re Corboy* (1988), 124 Ill. 2d 29, has already dealt with this question to the extent necessary to give adequate guidance to the bench and bar of this State. In that opinion, we held that evidence of dishonest intent and motive is not necessary to justify imposition of discipline. (*In re Corboy*, 124 Ill. 2d at 39, citing *In re Clayter* (1980), 78 Ill. 2d 276, 283.) We further held that evidence showing a lack of dishonest intent is usually only appropriate to determine the nature and severity of the sanction im-

posed. (*In re Corboy*, 124 Ill. 2d at 39, citing *In re Clayter* (1980), 78 Ill. 2d 276.) It is unnecessary for us here to determine whether the *per se* construction urged by the Administrator is applicable. In *In re Corboy*, we declared that Rule 7—110(a) must be read in conjunction with the Code of Judicial Conduct, Rule 65(C)(4)(a) (107 Ill. 2d R. 65(C)(4)(a)), and we directed an amendment to Rule 7—110(a) to that effect. By reading the amended rule as we have strictly construed it in *In re Corboy*, the limited extent to which an attorney may make a gift or loan to a judge will be apparent. However, under any analysis of Rule 7—110(a), respondent's loans were improper. The evidence supports the conclusion that respondent intended to and did in fact receive an actual benefit from the loans made to LeFevour. Therefore, we cannot accept respondent's contention that he had no intent to receive a benefit from his conduct. At all times relevant to his proceeding the respondent had a large volume of cases pending in the district over which LeFevour presided; the Review Board noted that at all times from 20% to 50% of the respondent's practice consisted of cases in that district. (*Cf. In re Corboy*, 124 Ill. 2d at 48 (Board found attorney Tuite's firm had a number of cases in the first municipal division, but also found there was absolutely no evidence that attorney Tuite's loan was an attempt to gain favor in any way).) Although neither the respondent nor any of his associates in this case ever appeared before LeFevour, in view of the large volume of cases the respondent had in the first municipal district, as well as the fact that LeFevour was a good source of business for respondent, it was to respondent's advantage to maintain an amicable relationship with LeFevour, the administrative head of that branch, in the event it ever became necessary for him or his associates to appear before the presiding judge in a case or to make a request of the presiding judge, who in the exer-

cise of his administrative responsibilities may have been of assistance to lawyers who had cases pending there.

It is obvious that the respondent's loans to LeFevour were a means of cementing and maintaining his relationship with his old friend, who had been elevated to the leadership of the district of the court in which he and lawyers in his office appeared frequently in a large number of cases. (See *In re Schwarz* (1972), 51 Ill. 2d 334 (motive and intent must ordinarily be inferred from conduct).) Therefore, although it appears there had never been an occasion when LeFevour had actually favored him in the past, there was certainly the appearance of impropriety. Given this, and the fact that, at times, fully half of respondent's practice was in the division over which LeFevour presided, there was the real possibility that the respondent might be the beneficiary of LeFevour's favor in the future.

For that reason, we view the loans made to LeFevour and the solicitations the respondent made on behalf of LeFevour's mother as conferring a benefit on both LeFevour and the respondent. LeFevour benefitted through the receipt of the loans and respondent's services as solicitor of loans from other attorneys. Respondent intended to benefit and did benefit by the continuance and guarantee of a favorable relationship with the judge, which might prove to be valuable to respondent in the future.

That maintaining this benefit was the primary reason behind the loans is illustrated by the incident in which LeFevour asked the respondent for $10,000. Although the respondent had enough money to loan LeFevour the $10,000, and LeFevour was apparently in a situation where his family was in great need of the money to assure continued medical care for LeFevour's mother, respondent claimed not to have the money. This highlights that friendship and concern for LeFevour's family were

not the underlying motives for the loans. This conclusion is supported by the fact that although respondent claims that all loans were made for purely friendly purposes, respondent has admitted that he actually could not remember the purpose of any of the loans to LeFevour. Also, the marked increase in frequency of loans from respondent to LeFevour in the period after LeFevour became presiding judge suggests a purpose behind the loans other than friendship. Clearly, the respondent was not concerned about the financial need of LeFevour's family, but made the loans simply because he did not want to run the risk of incurring LeFevour's wrath and losing his favor by refusing to lend him money.

We conclude that under the circumstances of this case, it was a violation of Rule 7—110(a) for the respondent to make loans or give anything of value—in this case the respondent's services in soliciting other lawyers—to the presiding judge of a court or a division of a court in which the respondent had pending a substantial volume of the cases he was handling, even when the judge had never been personally involved in any of the cases.

This court has not had the occasion to decide the proper sanction for a violation of Rule 7—110(a). In determining the appropriate sanction for a disciplinary violation, each case must be decided on its own facts. (*In re Hall* (1983), 95 Ill. 2d 371.) Respondent argues that the appropriate sanction, if any, is a private reprimand, based on several cases from other jurisdictions. These decisions are distinguishable because they involved isolated incidents of misconduct, not the kind of continuing pattern of misconduct at issue in the present case.

This case is far different from the cases consolidated in *In re Corboy*, where the attorneys' conduct constituted a violation of Rule 7—110(a) only because of the construction we placed on Rule 7—110(a) in that case. Here, respondent's conduct constituted a violation of

that rule even without the strict construction we have placed on the rule in question.

Considering the seriousness of the disciplinary violations in this case, the repeated nature of the violations, and the fact that respondent is an experienced practitioner who knew of the prohibitions of Rule 7—110(a) at the time the loans were made, we feel respondent's conduct warrants a more severe sanction than censure. Accordingly, respondent is suspended from the practice of law for two years.

*Respondent suspended.*

JUSTICE STAMOS took no part in the consideration or decision of this case.