(No. 65947.—

*In re* ARNOLD JEROME KARZOV, Attorney, Respond-
ent.

*Opinion filed December 15, 1988.—Rehearing denied
January 30, 1989.*

STAMOS, J., took no part.

William C. Cunningham, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Sidney Z. Karasik, of Chicago, for respondent.

JUSTICE MILLER delivered the opinion of the court:

As a result of activities uncovered by the Operation Greylord investigation of Judge Reginald J. Holzer, the Administrator of the Attorney Registration and Disciplinary Commission filed a two-count complaint charging the respondent, Arnold Jerome Karzov, with professional misconduct. The Administrator alleged that respondent engaged in two separate financial transactions with Judge Holzer and, in each instance, violated Rule 7—110(a) (giving or lending a thing of value to a judge); Rule 1—102(a)(3) (engaging in illegal conduct involving moral turpitude); Rule 1—102(a)(5) (engaging in conduct that is prejudicial to the administration of justice); Rule 1—103(a) (failing to report knowledge of a violation of Rules 1—102(a)(3) or (a)(4)); and Canon 9 (failing to avoid the appearance of professional impropriety) of the Illinois Code of Professional Responsibility (107 Ill. 2d R. 1—101 *et seq.*).

A panel of the Hearing Board found for respondent on count I, against respondent on count II, and recommended that respondent be suspended from the practice of law for 15 months. Both respondent and the Administrator filed exceptions to the Hearing Board's report and recommendation. The Review Board disagreed with the Hearing Board, finding against respondent on both counts and recommending a two-year suspension from the practice of law. Respondent then filed exceptions with this court to the Review Board's report and recommendation. See 107 Ill. 2d R. 753(e)(5).

Respondent was licensed to practice law in this State in 1962 and, since his admission to the bar, has practiced primarily in the area of business law with an emphasis on chancery matters. Judge Holzer was assigned to the chancery division of the circuit court of Cook County

from 1978 to 1985. For five or six of those years, respondent had 12 to 15 cases before Holzer, or approximately two to three cases per year. Respondent knew Holzer on a first name basis but was not a social friend. The facts, findings, and recommendations as to each count are set forth separately below.

## COUNT I

Beginning in 1976, one of respondent's principal clients was Albany Bank and Trust Company, N.A. (Albank), for whom he acted as general counsel. Respondent owned about 2% of Albank's stock and was secretary to the board of directors, but was neither a director himself nor a member of the loan committee. In February 1981, respondent had one case pending before Holzer. (Albany Bank & Trust Company v. Helfer (Cook Co. Cir. Ct.), No. 80—CH—9046.) The case was a mortgage foreclosure proceeding brought by Albank on a delinquent mortgage.

In the same month, February 1981, respondent went to the outer office of Holzer's chambers to have an order file-stamped by Holzer's clerk. Present in the office with respondent were Holzer's clerk and several other attorneys who were also there to have orders file-stamped. While respondent waited, Holzer came into the outer office and asked respondent for the name of a loan officer at Albank. Respondent gave Holzer the name of a senior loan officer, Mr. Joseph Kurtzke. Holzer then applied for a loan from Albank through Kurtzke. Later that month, Kurtzke called respondent for information about Holzer in connection with the loan. Kurtzke asked respondent whether he knew anything unfavorable about Holzer, and respondent replied that he did not. Then, on February 18, 1981, Holzer received a $24,000, unsecured loan from Albank.

The Administrator alleged that respondent had used his position as general counsel for Albank to help Holzer obtain the $24,000 loan and charged him with violating Rule 7—110(a), which prohibits giving or lending a thing of value to a judge, and also with violating the other Code provisions cited above. At the hearing, the Administrator's evidence consisted of respondent's testimony about the circumstances surrounding the loan and a loan memorandum form prepared by Kurtzke in the course of processing Holzer's loan application. The circumstances surrounding the loan showed that respondent's practice caused him to appear before Holzer periodically, that Holzer knew respondent represented Albank, and that Albank then had a case pending before Holzer. The loan memorandum listed respondent's name under a heading entitled "SOURCE." The same memorandum also contained the following statement under a heading entitled "OTHER INFORMATION":

> "Judge Holzer has been well and favorably known to Mr. Karzov for many years. *** We recommend approval as presented."

To rebut the Administrator's evidence, the respondent testified that he was not the "source" of the loan as stated on the loan memorandum. In support of his denial, respondent called as a witness Dr. Martin L. Gecht, chief executive officer and chairman of the board of Albank. Gecht testified that he knew Holzer from various social and civic affairs and from serving on the executive committee of another bank which had loaned Holzer money. Gecht further testified that around the time the loan was made, Holzer had asked him whether Albank would entertain a $10,000 loan to him. Gecht told Holzer that it would and suggested that Holzer call someone at the bank and let them know that Gecht had told Holzer to call. Gecht explained that the purpose of the information listed under the heading "SOURCE" was to tell the

loan committee how a loan applicant had come to the bank. Gecht testified that when he and the other directors had given final approval for the loan to Holzer, he had not believed that respondent was the source of the loan.

Respondent also denied the validity of the loan memorandum's notation that Holzer was well and favorably known to him for many years. Respondent stated that Kurtzke called him, explained that the bank was considering a loan to Holzer and asked respondent if he knew anything unfavorable about Holzer. Respondent testified that in response to Kurtzke's inquiry he simply replied that he knew nothing unfavorable about the judge. Respondent further explained that Kurtzke's use of the phrase "we recommend approval as presented," in the memorandum was the loan officer's customary way of referring to himself and that it did not mean that respondent had recommended the loan be made to Holzer. Respondent stated that he neither was involved in nor recommended approval of the Holzer loan.

Based on the evidence presented, the Hearing Board dismissed the charges in count I. In resolving the conflicting evidence concerning respondent's involvement in the Holzer loan, the Hearing Board accepted respondent's explanation of the events. The Board then concluded that, by merely giving Holzer the name of a senior loan officer at Albank and by answering the officer's inquiry, respondent had not given the judge a "thing of value" for the purposes of Rule 7—110(a) and that he had not engaged in conduct in violation of Rule 1—102, Rule 1—103 or Canon 9.

The Review Board disagreed with the Hearing Board's findings of fact and then concluded that respondent's actions constituted professional misconduct. The Review Board found that respondent had not merely given the name of a senior loan officer to Holzer but

that he had used his position as Albank's attorney to enable Holzer to obtain the unsecured loan. The Review Board concluded that respondent's assistance to Holzer constituted a "thing of value" under Rule 7—110(a).

In rejecting the Hearing Board's factual determinations, the Review Board relied on (1) the loan memorandum's designation of respondent as the source of the loan, and (2) respondent's grand jury statement, offered to impeach respondent's prior testimony, which stated that respondent's referral of Holzer to the bank somewhat improved Holzer's position. At the hearing, however, respondent had denied the import of the notation on the loan document and the implication of influence contained in the grand jury statement. The hearing panel had resolved these disputed questions in respondent's favor.

In attorney discipline cases, where the resolution of a contested question of fact depends on the credibility of the testimony of a witness, this court gives deference to the Hearing Board's finding on that fact. In such cases, deference is given to the Board's factual determinations because, as the initial trier of fact, the Hearing Board panel is able to observe witnesses' demeanor and to judge their credibility. (*In re Hopper* (1981), 85 Ill. 2d 318, 323.) Thus, we will generally not disturb the Board's factual findings unless they are against the manifest weight of the evidence. (See *In re Ushijima* (1987), 119 Ill. 2d 51, 56-57.) In this case, the Hearing Board panel believed respondent's account regarding his participation in the loan. The Board's finding on this disputed question is supported not only by respondent's own testimony but also by that of Gecht. Therefore, unlike the Review Board, we find no reason to disturb the Hearing Board's finding on the extent of respondent's involvement in the Holzer loan.

We note that, at the hearing, the panel expressed its concern with the Administrator's failure to call Kurtzke, the one individual who could have explained how Holzer's loan was submitted. Under these circumstances, we cannot say that the Board erred in its determination that the Administrator's evidence fell short of the clear and convincing standard required in attorney disciplinary proceedings. See 107 Ill. 2d R. 753(c)(6); see also *In re Moore* (1956), 8 Ill. 2d 373, 379.

Having accepted the Hearing Board's finding that respondent's only participation in the Holzer loan was the giving of a loan officer's name to the judge and the subsequent response to that officer's inquiry, we are left to determine whether respondent's conduct constituted giving a thing of value to a judge. Although we give normal deference to the Hearing Board's findings of fact, we are not required to give deference to conclusions of law. See *In re Anglin* (1988), 122 Ill. 2d 531, 538-39; *In re Carr* (1941), 377 Ill. 140, 143.

In determining whether respondent's actions constituted a thing of value, we look to see whether the information that respondent gave to Holzer and Kurtzke conferred a benefit upon Holzer. (See *In re Ketchum* (1988), 124 Ill. 2d 50, 59.) By furnishing Holzer with Kurtzke's name, respondent did not give Holzer a thing of value since the names of Albank's officers were available to the general public. Moreover, there was no evidence that a loan applicant was more likely to obtain a loan (or a loan on more favorable terms) by applying for it through Kurtzke rather than some other loan officer at Albank. While respondent may have saved Holzer the effort of obtaining a loan officer's name from another source, responding to an inquiry such as that made by Holzer without more does not constitute a thing of value for the purposes of Rule 7—110(a).

Likewise, respondent did not provide a benefit to Holzer by telling Kurtzke that he knew nothing unfavorable about the judge. Respondent's comment was an apparently truthful response to an inquiry initiated by respondent's client. The hearing panel determined that respondent did not recommend or even suggest that Holzer receive a loan from Albank. Moreover, there was no evidence that respondent offered any opinion regarding Holzer's creditworthiness or financial stability.

Because of the absence of Kurtzke's testimony to the contrary and the ambiguity of the language in the loan memorandum, we accept respondent's explanation of the statements contained in the bank document. Further, in the absence of evidence to the contrary, we accept respondent's account of the grand jury statement, as did the hearing panel. Respondent explained that the statement was prepared by a government attorney after a conversation with respondent concerning the loan transaction and that it expressed conclusions drawn by respondent before he learned of Gecht's involvement in initiating the loan.

Based on the facts as found by the Hearing Board, we conclude that the Administrator has not shown that respondent violated Rule 7—110(a), Rule 1—102(a)(5), Rule 1—103(a) or Canon 9, as charged in count I. Accordingly, the charges in count I are dismissed.

## COUNT II

In count II, the Administrator charged that respondent violated the same disciplinary rules as charged in count I, by delivering $1,000 cash to Holzer when the judge requested a loan. At a hearing before a panel of the Hearing Board, the evidence showed that on November 23, 1981, at the request of Ernest Worsek, a receiver in a chancery case, Holzer appointed respondent as Worsek's attorney. In May 1982, respondent terminated his

duties as attorney for the receiver, at which time Holzer approved his petition for attorney fees of $4,950. Seven months later, on the morning of December 20, 1982, the receivership was ended.

On the afternoon of December 20, 1982, Holzer called respondent and asked him to come to Holzer's chambers at the Daley Center. Upon respondent's arrival, Holzer recessed court and took respondent into his inner chamber. Holzer then told respondent that he was going on vacation and needed a $1,000 loan to tide him over until after the first of the year. When respondent asked if a check would be satisfactory, Holzer replied that he would prefer cash. Respondent then withdrew the $1,000 from his safe-deposit box and gave it to Holzer that same day. No promissory note was signed, no rate of interest was discussed and no terms of repayment were set forth. Holzer eventually repaid respondent half of the loan but only after the Federal investigation into Holzer's conduct had begun.

At his hearing, respondent testified that he was shocked by Holzer's request for money, that he did not want to lend Holzer the funds, and that he resented being put in what he considered an untenable position. Respondent explained that he reluctantly acceded to Holzer's request because having had cases before Holzer in the past, he anticipated appearing before him in the future. Respondent stated that he feared refusing the judge would cause Holzer to retaliate against him, or his future clients.

Although at the time of the loan respondent did not have any cases pending before Holzer, respondent testified that he later represented at least one client in a case before the judge. Respondent testified that he failed to disclose his financial dealings with Holzer to the parties or opposing counsel in that case, and that he did not report Holzer to the Judicial Inquiry Board or law en-

forcement authorities. At the hearing, however, respondent did produce seven character witnesses who testified favorably as to his reputation for honesty and integrity.

Based upon the evidence presented, the Hearing Board concluded that respondent's $1,000 loan to Holzer constituted an ethical violation and recommended a 15-month suspension. After rejecting the Hearing Board's findings on count I, the Review Board agreed with the Hearing Board's findings of fact as to count II, but recommended a two-year suspension.

Respondent concedes before this court that he committed an ethical violation by lending Holzer money. Respondent argues, however, that a two-year suspension is an unduly harsh sanction and that it is not justified by the circumstances of the misconduct. Respondent contends that, in determining the severity of discipline, this court should consider whether the misconduct in question was prompted by corrupt or dishonest motives. Respondent argues that there is a qualitative difference between a bribe and a loan. Respondent asserts that when he delivered the $1,000 in cash to Holzer he believed it to be a true loan and, for this reason, he is less blameworthy than he would be had he considered it a bribe. The Administrator, on the other hand, contends that respondent's actions warrant disbarment.

We recognize that this court has previously been guided by the absence of improper motives when determining an appropriate sanction. (See, *e.g., In re Clayter* (1980), 78 Ill. 2d 276; *In re Ahern* (1961), 23 Ill. 2d 69.) In this case, however, respondent testified at his hearing and admitted to this court that, while he resented Holzer's request for money, he agreed to the loan to avoid possible retaliation by Holzer against his clients in the future. Respondent was not motivated by charity or compassion for Holzer but by a desire to avoid adverse rulings in cases he anticipated having before the judge.

(*Cf. In re Corboy* (1988), 124 Ill. 2d 29, 39, 48, 49 (no findings of improper motives).) Because respondent's motives in making the loan in this case were designed to influence Holzer in judicial decisions, we determine that substantial discipline is warranted.

Still, we cannot agree with the Administrator that this is a proper case for disbarment. At the time of the loan in December 1982, respondent did not have a case pending before Holzer. Although the receivership was not formally terminated until the day the loan was made, respondent's duties as attorney for the receiver had ended seven months before, at which time Holzer had approved respondent's petition for attorney fees. While the absence of a pending case does not excuse respondent's conduct, this factor may be taken into account in determining the severity of sanction. In *In re Powell* (1988), 126 Ill. 2d 15, we considered the fact that the respondent there had a case pending at the time of his misconduct as an aggravating factor. Moreover, unlike the respondent in Powell, the respondent here did not aggravate his misconduct by involving a client in the plan. See *Powell*, 126 Ill. 2d at 32.

In *In re Ketchum* (1988), 124 Ill. 2d 50, the respondent made several loans to Judge Richard LeFevour over the course of several years. At the time of the loans, LeFevour was the presiding judge of a district in which the respondent had numerous cases pending. Although LeFevour had never been personally involved in any of the respondent's cases, there was a "real possibility that the respondent might be the beneficiary of LeFevour's favor in the future." (*Ketchum*, 124 Ill. 2d at 59.) Having found that the loans to LeFevour were made with the intent to receive a possible benefit from LeFevour, we suspended the respondent for two years. The length of the suspension was based in part on the repeated nature of the violations. (*Ketchum*, 124 Ill. 2d at 61.) Respondent's

misconduct in this case is similar in several respects to that in *Ketchum* but was a single act rather than a recurrent course of conduct.

Because of the circumstances of this case, we find that a suspension from the practice of law for 18 months is appropriate. Accordingly, respondent is suspended for 18 months.

*Respondent suspended.*

JUSTICE STAMOS took no part in the consideration or decision of this case.