(No. 66772.—

*In re* STEVEN B. LUNARDI, Attorney, Respondent.

*Opinion filed March 29, 1989.*

Althea J. Kuller, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Jeffrey B. Steinback and Geena Diane Cohen, of Genson, Steinback & Gillespie, of Chicago, for respondent.

JUSTICE STAMOS delivered the opinion of the court:

On February 21, 1986, respondent, Steven B. Lunardi, was convicted on a plea of guilty to unlawfully possessing less than 30 grams of a substance containing cocaine in violation of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). On April 23, 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a petition pursuant to Supreme Court Rule 761 (107 Ill. 2d R. 761), seeking respondent's suspension from the practice of law based upon the conviction. This court issued a rule to show cause on May 5, 1986. On October 7, 1986, the rule was continued and the Commission was directed to expedite disciplinary proceedings. In March 1988, the rule to show cause was discharged.

The Administrator, meanwhile, had filed a two-count complaint on December 10, 1986, charging respondent with professional misconduct. The Administrator alleged in count I that respondent had violated Rule 1—102(a)(3) (engaging in illegal conduct involving moral turpitude), Rule 1—102(a)(5) (engaging in conduct that is prejudicial to the administration of justice), Rule 7—102(a)(8) (engaging in other illegal conduct or conduct contrary to a disciplinary rule while representing a client), and Canon 9 (failing to avoid the appearance of professional impropriety) (107 Ill. 2d Rules 1—102(a)(3), 1—102(a)(5), 7—102(a)(8), Canon 9) of the Illinois Code of Professional Responsibility (the Code) (107 Ill. 2d R. 1—101 *et seq.*), based upon respondent's conviction and prior actions. In count II, which was based on a loan from respondent to Judge Witt of the circuit court of Lake County, the Ad-

ministrator alleged that respondent violated Rule 7—110(a) (giving or lending a thing of value to a judge), Rule 1—102(a)(4) (engaging in conduct involving fraud, deceit or misrepresentation), Rule 1—102(a)(5) (engaging in conduct that is prejudicial to the administration of justice), and Canon 9 (failing to avoid the appearance of professional impropriety) of the Code. (107 Ill. 2d Rules 7—110(a), 1—102(a)(4), 1—102(a)(5), Canon 9.) After respondent filed his answer on February 4, 1987, the Hearing Board granted the Administrator's motion to file an amended complaint, which was filed on April 6, 1987. The complaint was amended by adding a third count charging respondent with violating the same four disciplinary rules alleged in count II, based upon a second, different loan from respondent to Judge Witt.

A panel of the Hearing Board found that respondent had violated Rules 1—102(a)(3) and 7—102(a)(8) and Canon 9 concerning count I. The panel further found that respondent had violated Rules 7—110(a) and 1—102(a)(5) and Canon 9 concerning counts II and III. The panel recommended that respondent be suspended from the practice of law for three years, with all but the first 60 days to be stayed, and that respondent be placed on disciplinary probation with certain conditions. The Administrator filed exceptions to the Hearing Board's report and recommendation and respondent filed cross-exceptions. The Review Board adopted the findings of fact and conclusions of law made by the Hearing Board, but recommended that respondent be suspended from the practice of law for one year. Respondent then filed a motion in this court to allow his exceptions to the Hearing Board's report and recommendations to stand as his exceptions to the Review Board's report and recommendation. We allowed respondent's motion on March 28, 1988.

At the hearing conducted by the Hearing Board and also during his oral argument before this court, respond-

ent acknowledged that his conduct constituted professional misconduct under the three counts of the complaint. While respondent argues that his conviction does not constitute "moral turpitude" within the proscriptions of Rule 1—102(a)(3), the paramount issue before this court, as respondent conceded during oral argument, is what discipline should be imposed. With that in mind, we shall examine respondent's conduct and the facts, findings and recommendations as to count I separately from counts II and III.

## COUNT I

Respondent was licensed to practice law in this State in 1975. Following his admission to the bar, respondent served as an assistant State's Attorney in Lake County for over two years. As an assistant State's Attorney, respondent prosecuted, both at trial and as plea bargains, a variety of misdemeanor offenses, including possession of controlled substances. In 1978, respondent joined a law firm as an associate and concentrated in criminal law; on occasion he represented clients charged with possession of controlled substances, including marijuana and cocaine. Respondent opened his own firm in 1980, and in 1981 entered into a partnership with another attorney. Between 1980 and 1985, respondent estimated, 75% of his practice related to criminal or quasi-criminal law. The partnership was dissolved in 1986, and since that time respondent has worked as a sole practitioner.

A psychiatrist and assistant professor at Northwestern University, who treated respondent and who concentrates in the field of addiction and chemical dependency, testified that respondent first used cocaine sometime around 1979. At some point between 1979 and 1983, according to the doctor, respondent became addicted to cocaine. By January 1985, respondent was using approximately one gram of cocaine per day. He also purchased

and used marijuana and consumed fairly large amounts of alcohol during this same time period.

Respondent was arrested for possession of cocaine on May 21, 1985. Earlier that day, respondent had given Gus Karabetsos, a social acquaintance from whom respondent had previously purchased cocaine, $1,800 to purchase an ounce of cocaine. Karabetsos made the purchase and delivered it to respondent that evening.

Respondent was indicted by a Lake County grand jury for possession of a controlled substance under section 402(b) of the Illinois Controlled Substances Act (Ill. Rev. Stat. 1985, ch. 56½, par. 1402(b)). Respondent initially pleaded not guilty, but following negotiations with the Attorney General's office, eventually pleaded guilty and was convicted and sentenced on that charge on February 21, 1986. Respondent was sentenced to a term of 30 months' conditional discharge, pursuant to section 5—6—3 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—6—3). Respondent was also ordered to successfully complete a drug rehabilitation program, consent to periodic drug screenings, and perform 240 hours of community service by participating in programs relating to the assistance of drug users. Respondent was further ordered to pay a fine of $11,179.03, the unpaid balance on his 1984 Corvette, which had been confiscated at the time of his arrest; respondent agreed not to contest the forfeiture of the car as part of the sentence. Moreover, respondent was required to testify truthfully in all matters relating to the source of the cocaine he possessed on May 31, 1985. He was also prohibited from appearing as counsel of record or assisting counsel for the duration of the conditional discharge period in any felony case or drug-related case, except specific pending cases in which his appearance was *pro bono*.

The Hearing Board and Review Board concluded that respondent had not only fulfilled the terms of his conditional discharge, but had in fact exceeded the number of hours of community service required. Testimony at the hearing indicates that respondent zealously pursued all efforts at rehabilitating himself. Following the successful completion of a 28-day drug rehabilitation program at Martha Washington Hospital, respondent became involved with and attended, and continues to attend, regular meetings of a number of groups, including or affiliated with Narcotics Anonymous, Alcoholics Anonymous, Martha Washington Hospital and Lawyers Assistance Program. He assisted in developing a Lake County office of the Lawyers Assistance Program, and conducts meetings in his office. He is also a trained intervenor with the Lawyers Assistance Program. Indeed, we find that respondent's response to this incident has been nothing short of remarkable. We adopt the finding of the Hearing Board that the testimony of Dr. Shick was particularly impressive on the extent of respondent's rehabilitation. Dr. Shick concluded that respondent appeared to be one of the few drug abusers who has overcome his drug addiction without having slipped from time to time in his recovery.

The Administrator argues that respondent's drug use and conviction warrant discipline irrespective of whether it involved moral turpitude. The respondent argues that his conduct and conviction do not constitute moral turpitude under Rule 1—102(a)(3), and that discipline is not warranted in light of respondent's efforts at rehabilitation.

We believe that this case is controlled by this court's decision in *In re Scarnavack* (1985), 108 Ill. 2d 456. In *Scarnavack*, the respondent, a former assistant State's Attorney of Cook County, was convicted in Federal court of the knowing possession of approximately one-half of a

gram of a mixture containing cocaine. (*Scarnavack*, 108 Ill. 2d at 457.) The respondent testified that he obtained the cocaine from a client and that he had never possessed a controlled substance either before or since his arrest. The Hearing Board found that respondent had violated Rules 1—102(3), 1—102(5) and 771 (87 Ill. 2d Rules 1—102(3), 1—102(5), 771).

This court found it unnecessary to address the issue of whether an attorney's unlawful possession of a controlled substance is conduct involving moral turpitude, finding that if an attorney is convicted of a crime that does not involve moral turpitude, he still may be disciplined. (*Scarnavack*, 108 Ill. 2d at 460; see 107 Ill. 2d R. 761.) We likewise find it unnecessary to address this issue in determining what sanction is appropriate in this case. 107 Ill. 2d R. 761(c).

In *Scarnavack*, the court considered, as an aggravating factor, that respondent, who had prosecuted narcotics cases as an assistant State's Attorney, was unquestionably aware of the laws prohibiting possession of cocaine. The court also considered the fact that respondent had acquired the drug from a client. The court concluded that an attorney "is held to a higher standard of conduct, particularly with respect to upholding the law, so that a conviction for such a criminal offense as in the present case requires disciplinary action in order to protect the public, the courts, and the legal profession." *Scarnavack*, 108 Ill. 2d at 460-61, citing *In re Thompson* (1963), 30 Ill. 2d 560.

The court then considered as mitigating factors that respondent had been undergoing marital difficulties, and that this was respondent's only blemish on an otherwise untarnished record of professional activities. Moreover, the court noted, the Hearing Board had found no intent to sell or distribute any drug, and respondent admitted his guilt and expressed regret. Finally, the court took no-

tice from character witnesses who testified on respondent's behalf that respondent had a good reputation and was a competent attorney. The court concluded that censure was an appropriate sanction.

Many of the same aggravating and mitigating factors are present in the case at bar. Respondent here handled drug possession cases both as an assistant State's Attorney and in private practice. He was obviously well acquainted with the laws of this State concerning possession of controlled substances and, as an attorney, must be held to a higher standard of conduct with respect to upholding the law. The Administrator contends that respondent's conduct is much more egregious and deserving of some period of suspension than respondent's conduct in *Scarnavack*. Respondent here, argues the Administrator, unlike the respondent in *Scarnavack*, was a frequent substance abuser who purchased, used and possessed drugs over a period of several years. The Administrator also notes that respondent was found in possession of four to five ounces of marijuana, as well as nearly an ounce of cocaine, as opposed to respondent in *Scarnavack*, who was found in possession of approximately one-half of a gram of cocaine.

In deciding what sanction is appropriate, we note that each disciplinary case is unique and that the sanction imposed must be based on the particular set of facts presented. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 53.) Moreover, the purpose of attorney discipline is not to punish the attorney but to protect the public and to maintain the integrity of the judicial system. (*D'Angelo*, 126 Ill. 2d at 53; *In re Pappas* (1982), 92 Ill. 2d 243, 247.) This court also considers any mitigating circumstances in each case.

As we have already noted, respondent has made a commendable, and so far successful, recovery from his abuse of drugs. We agree with the Review Board that

respondent's personal rehabilitation and continuing contribution of time and energy to help others with drug and alcohol problems is remarkable. In mitigation, we further note that respondent faithfully complied with all conditions of his conditional discharge, exceeding the number of hours required of community service. Respondent testified before a Lake County grand jury concerning the manner in which he obtained cocaine from Karabetsos; it appears that Karabetsos was subsequently indicted on charges stemming from that incident. Respondent abstained from accepting employment in any felony or drug-related case, resulting in a drop in the percentage of criminal cases making up his practice to approximately 40% from an earlier estimated 75%. This resulted in a loss of approximately $2,000 a month, according to respondent's testimony.

Respondent has acknowledged his guilt and remorse, and cooperated fully and candidly with the Administrator in this matter. Respondent's record, until this present complaint by the Administrator, was untarnished, and there was no evidence presented that respondent intended to, or ever actually did, sell or distribute any unlawful substances. Evidence at the hearing indicates that respondent purchased cocaine and marijuana solely for his own personal use. Finally, we note that nine character witnesses testified at the hearing to respondent's excellent reputation for honesty and integrity, and the parties stipulated that at least five other attorneys were available and willing to testify to the same opinion.

In light of these facts, we believe that respondent should be suspended, with such suspension to be commensurate and concurrent with the discipline imposed for his conduct under counts II and III.

## COUNTS II AND III

Respondent met and commenced a friendship with Alfonse Witt in November 1975, when respondent was appointed an assistant State's Attorney in Lake County, where Witt was the First Assistant State's Attorney of Lake County.

In approximately July 1976, Witt became a judge in the circuit court of Lake County. During 1976 and 1977, while still employed as an assistant State's Attorney, respondent prosecuted a number of cases before Judge Witt. When respondent entered private practice in 1978, he continued to appear before Judge Witt on a regular basis. Respondent and Judge Witt remained friends after Witt became a judge and throughout the years that respondent was in private practice.

Respondent and Judge Witt had an active friendship. The two played tennis and golf as well as waterskied together, went out to dinner besides going to each other's residences for dinner, and vacationed together several times.

Sometime in 1982 or 1983, Judge Witt approached respondent and sought an emergency loan. Witt informed respondent that he had written a number of checks in anticipation of receiving his paycheck from the State, but that his paycheck had been delayed. Respondent agreed to loan Witt between $1,200 and $1,400, and gave Witt a check in the agreed-upon amount. Witt repaid the loan in full, without interest, two or three days later. No promissory note was executed, and during this time period respondent had no cases pending before Witt.

In November 1984, Witt asked respondent for a second loan. Witt told respondent that he needed approximately $1,100 to pay an overdue property tax bill. Respondent had his secretary type up a check in the

amount of $1,100, made payable to Witt, and gave it to Witt on or about the date of the check, November 13, 1984. It was agreed that Witt would repay the loan in installments of $100 a month until the loan was repaid, and that Witt would give respondent an extra $100. No promissory note was ever executed. Witt commenced repaying the loan in January 1985, at the agreed upon rate of $100 a month. Witt made the monthly payments by check and, although he was occasionally late in making payments, had fully repaid the loan by December 1986.

Between 1978 and 1986, respondent regularly appeared before Judge Witt on behalf of clients in connection with a variety of matters. Although respondent did not appear before the judge while his first loan was outstanding, respondent did appear before him during the pendency of the second loan.

On December 5 and 14, 1984, respondent appeared on behalf of a client in a bench trial before Judge Witt. The client had been charged with battery. The trial took place approximately one month after respondent's second loan to the judge, and before the judge had begun to repay the loan. Respondent's client was acquitted by the judge. Respondent admitted at the hearing before the Hearing Board that at no time during the course of proceedings did he disclose to the prosecution or his client that he had a debtor-creditor relationship with Judge Witt. Respondent also did not move for a substitution of judge or a change of venue. Respondent's appearance before Judge Witt to argue two motions, both of which were denied, may also have come during the pendency of this loan.

Respondent argues that in light of this court's recent interpretation of Rule 7—110(a) (107 Ill. 2d R. 7—110(a)) in *In re Corboy* (1988), 124 Ill. 2d 29, it would be unfair and inappropriate to suspend respondent from the practice of law in connection with these two loans. The Ad-

ministrator contends that respondent should be suspended for two years.

In considering counts II and III, we note that although the Hearing Board found that respondent violated Rule 1—102(a)(5), Canon 9 and Rule 771, the principal allegation, and the one on which these subsidiary charges depend, is that respondent violated Rule 7—110(a). (See *In re Jones* (1988), 125 Ill. 2d 371, 377; *In re Corboy* (1988), 124 Ill. 2d 29, 37.) We also note that this court has recently held that Canon 9 does not afford a basis for imposing sanctions independent of an allegation and proof of a violation of one of the disciplinary rules contained within the canon (*In re Powell* (1988), 126 Ill. 2d 15, 29-30); respondent's alleged violations of Canon 9 under counts I, II, and III, therefore, must be discharged.

Respondent specifically contends that this court addressed the appropriate sanctions for attorney loans to judges as a matter of first impression in *Corboy*, and that because the court discharged the complaints against the respondents in *Corboy* even though their conduct fell within the new interpretation of Rule 7—110(a), we should likewise refrain from disciplining respondent for violating that rule. Moreover, respondent argues, the language of *Corboy* indicates that while conduct, such as respondent's, may now be disciplinable under Rule 7—110(a), it would be unfair to discipline respondent for engaging in conduct that, without the benefit of *Corboy*, he did not know was wrong.

Rule 7—110(a), in effect at the time of respondent's conduct at issue here, provided that "[a] lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal, except that a lawyer may make a contribution to the campaign fund of a candidate for such office." (107 Ill. 2d R. 7—110(a).) In *Corboy*, this court held that Rule 7—110(a) must be read in conjunc-

tion with Rule 65(C)(4) of the Code of Judicial Conduct (107 Ill. 2d R. 65(C)(4)), and amended Rule 7–110(a) to incorporate this development. (*Corboy*, 124 Ill. 2d at 46.) Rule 65(C)(4)(c) and its predecessor prohibit a judge from accepting a gift or loan from any attorney practicing before him. 107 Ill. 2d R. 65(C)(4)(c); 87 Ill. 2d R. 61(c)(22).

In response to solicitations from an attorney who was a friend of Judge Richard LeFevour, four respondents in *Corboy* each gave a check for $1,000 to LeFevour; the respondents had been told that the money was to go to LeFevour's mother, to help pay for her hospital bills. None of the four was a personal friend of LeFevour, nor had any of them ever practiced before LeFevour, although each had an occasional case in the first municipal district of the circuit court of Cook County. None of the money was repaid. Two other respondents, Patrick Tuite and Samuel Banks, friends of LeFevour who had cases pending in the first municipal district of the circuit court of Cook County, were approached by LeFevour and asked to loan him money. Banks loaned LeFevour $2,500 on one occasion and $2,000 on another occasion. Tuite loaned LeFevour $5,000 on one occasion. LeFevour never paid back Banks, and repaid the $5,000 to Tuite only upon Tuite's statement that he would not represent LeFevour unless the money was repaid.

The court adopted the findings of fact of the Hearing Board that neither Banks nor Tuite made the loans with the intent to influence the judge, but that both had made the loans out of friendship. (*Corboy*, 124 Ill. 2d at 48-49.) The court found that all six respondents had technically violated Rule 7–110(a), holding that "application of the rule does not depend upon the subjective state of the attorney's mind." (*Corboy*, 124 Ill. 2d at 39.) Because Rule 65(C)(4)(c) allows a judge to accept a gift or loan only if the attorney has not practiced, and does not practice, before the judge, and is otherwise unlikely to come before

him (107 Ill. 2d R. 65(C)(4)(c)), the court held that all six respondents had violated Rule 7—110(a), as construed by the court in that opinion. All six attorneys had at least occasional cases in the first municipal district of the circuit court of Cook County, where Judge LeFevour presided. The court stated that it would strictly construe Rule 65(C)(4)(c) against any attorney invoking it as an exception to the prohibitions against making a loan or gift to a judge, stating that "[i]f the nature of an attorney's practice is such that a matter in which he is involved is likely to be involved in a court proceeding, then that attorney should be prohibited from making a gift to any judge who sits on the court where the case may be heard—circuit, appellate, or supreme." *Corboy*, 124 Ill. 2d at 43.

The court found that it would be unfair to discipline the six respondents because all "were sailing in uncharted waters." (*Corboy*, 124 Ill. 2d at 49.) Concerning the four respondents who acted in response to the solicitation, the court noted that "[t]hey acted without the guidance of precedent or settled opinion, and there was, apparently, considerable belief among members of the bar that they had acted properly." (*Corboy*, 124 Ill. 2d at 45.) In declining to discipline attorneys Banks and Tuite, whose factual situations more closely resemble that of respondent, the court noted that they "certainly could not have been aware of the construction that we have, for the first time, placed on that rule [7—110(a)] in this opinion. \*\*\* Although the respondents' conduct would constitute a violation of Rule 7—110(a) under the construction we have today placed upon that rule, such conduct would not constitute a violation under a more liberal construction of what constitutes 'practice before a judge' under Rule 65(C)(4)(c)." *Corboy*, 124 Ill. 2d at 49-50.

Respondent's argument that it would be unfair to discipline him in light of this court's actions in *Corboy* misses the point. Respondent, unlike Tuite and Banks, represented a client before Judge Witt during the pendency of the loan. Respondent's conduct, therefore, would constitute a violation of Rule 7—110(a) whether the court liberally construed what constitutes "practice before a judge" or not; there can be no question that representing a client before a judge during a bench trial, when that judge owes money to the attorney, constitutes "practice before a judge." This factor alone serves to distinguish this case from *Corboy*. Moreover, this court has disciplined attorneys for Rule 7—110(a) violations occurring prior to our holding in *Corboy*. *In re Lane* (1989), 127 Ill. 2d 90; *In re Rothenberg* (1989), 127 Ill. 2d 139; *In re Karzov* (1988), 126 Ill. 2d 33; *In re Heller* (1988), 126 Ill. 2d 94; *In re Powell* (1988), 126 Ill. 2d 15; *In re D'Angelo* (1988), 126 Ill. 2d 45; *In re Ketchum* (1988), 124 Ill. 2d 50.

In determining the proper sanction to be imposed for a violation of Rule 7—110(a), this court has considered a variety of factors. We have examined: (1) the intent of the attorney making the gift or loan; (2) the number of loans and the number of judges to whom money was loaned; (3) whether the attorney had cases pending before the judge to whom the loan was made; (4) whether or not the loan was repaid; (5) whether or not a promissory note was executed and whether interest was set or paid; (6) whether the attorney and judge had a social relationship; (7) whether the attorney was candid and cooperative towards the Administrator; and (8) whether the attorney's decision was made hastily or not.

Although in *Corboy* this court held that an attorney's intentions and motivations in making a loan to a judge are irrelevant in determining whether the attorney has violated Rule 7—110(a), we have viewed an attorney's in-

tentions as highly relevant in determining what discipline is appropriate for a Rule 7—110(a) violation. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 56; *In re Ketchum* (1988), 124 Ill. 2d 50, 57-59.) In many cases, we have considered it a substantial aggravating factor that an attorney loaned money for improper motives, such as to curry favor with a judge, or to protect himself and his clients from a judge's possible ill will. *Ketchum*, 124 Ill. 2d at 57-58; *In re Powell* (1988), 126 Ill. 2d 15, 31-32; *In re Karzov* (1988), 126 Ill. 2d 33, 44; *D'Angelo*, 126 Ill. 2d at 57-58.

We find no reason not to accept the specific findings of fact of the Hearing Board that Judge Witt and respondent were personal friends and that respondent viewed the loans as being personal loans from one friend to another. This court generally accords deference to the Hearing Board's findings of fact when a contested question of fact depends on the credibility of the testimony of a witness. We defer to the Hearing Board's factual determinations because, as the initial trier of fact, the Hearing Board is able to observe witnesses' demeanor and to judge their credibility. (*Karzov*, 126 Ill. 2d at 39.) Therefore, this court will generally not disturb the Board's factual findings unless they are against the manifest weight of the evidence. *Karzov*, 126 Ill. 2d at 39; see *In re Ushijima* (1987), 119 Ill. 2d 51, 56-57.

The Administrator argues that certain testimony of respondent at the hearing undercuts the finding that respondent loaned the money solely out of friendship. When asked if he could afford to loan Judge Witt the money for the second loan in 1984, respondent stated that a more prudent man might not have loaned the money. He further noted that he could have used the money himself. At another point, the respondent noted that had he known of Rule 7—110(a), he could have used it as an excuse not to make the second loan.

We do not believe that these statements indicate that the Hearing Board's findings are against the manifest weight of the evidence. It was well established that respondent and Judge Witt had been close friends for many years, even before Witt became a judge. Moreover, there is no evidence in the record that respondent made the loans to benefit himself or his clients. The Hearing Board was able to view the witness and observe his demeanor, as well as the other witnesses', and we believe that the Board's finding that the loans were made on the basis of friendship is not against the manifest weight of the evidence.

The Administrator contends that even if respondent had no improper intent in making the loans, the appearance of impropriety and potential for undue influence created by the loans are bases for suspension. As this court noted in *Corboy*:

> "The policy objective of Rule 7—110(a) is the preservation of an independent and impartial judiciary. *** It is designed not only to forestall lawyers from seeking to exercise improper influence over the judiciary, but also to eliminate even the appearance of improper influence." (*Corboy*, 124 Ill. 2d at 37-38.)

Respondent's conduct of representing a client before a judge with whom he had a debtor-creditor relationship implicates these policy objectives of Rule 7—110(a). (See *In re Lane* (1989), 127 Ill. 2d at 109-10.) Regardless of the lack of an improper intent by respondent to benefit from his actions, opposing counsel, as well as citizens of our State, would be concerned about a judge's presiding over a trial in which one of the parties is represented by an attorney to whom the judge owes money. Moreover, whether or not respondent actually improperly benefitted from the loans, and there is no evidence in the record that he did, the fact that any loan to a judge may affect his present or future treatment and rulings in

cases involving an attorney to whom he owes money is grounds for discipline under Rule 7—110(a).

In *In re Ketchum* (1988), 124 Ill. 2d 50, respondent, a longtime friend and neighbor of Richard LeFevour, a former judge in the circuit court of Cook County, made nine loans to LeFevour while LeFevour was a judge. Although respondent in that case never appeared before LeFevour, at all times 20% to 50% of the respondent's practice consisted of cases in the division over which LeFevour presided. The court noted that because of the amount of the respondent's practice which was conducted in LeFevour's division, "there was the real possibility that the respondent might be the beneficiary of LeFevour's favor in the future." (*Ketchum*, 124 Ill. 2d at 59.) Because respondent in the present case appeared before Judge Witt with regularity, the same concerns are implicated here.

Respondent's conduct, therefore, violated Rule 7—110(a) and is deserving of a sanction. Loans from attorneys to judges always conflict with the objective of Rule 7—110(a) to preserve the independence of the judiciary and forestall the appearance of impropriety when the loaning attorney regularly appears before the debtor judge. These concerns weigh even heavier when an attorney appears before the debtor judge, on behalf of a client, during the term of a loan.

In examining other aggravating factors present, we note that no promissory notes were executed for either loan, and that no interest was received on the first loan; it is unclear from the record whether respondent received any interest on the second loan.

Respondent's conduct, however, was much less serious than that of respondent in *Ketchum*, and is offset by several mitigating factors. Although respondent in *Ketchum* never appeared before LeFevour, the court found that the main reason that he made at least nine loans to

Judge LeFevour over a course of years was to benefit from the loans; respondent, the court noted, did not wish to incur LeFevour's wrath and risk losing his favor by refusing to lend him money. (*Ketchum*, 124 Ill. 2d at 57-60.) Moreover, LeFevour, as he had done before becoming a judge, continued throughout the period of the loans to refer personal injury cases to respondent.

Respondent here, on the other hand, was not motivated by an intent to benefit from the loans. Unlike respondent in *Ketchum*, who made at least nine loans to LeFevour, respondent loaned money to Witt only twice. Moreover, although no promissory notes were executed, we observe that this is the only case where a judge repaid all the monies he had borrowed from an attorney or attorneys. This supports the finding that the money lent here on two occasions was actually meant and treated solely as a loan between friends. We also acknowledge respondent's candor in testifying about his conduct before the Hearing Board, and his regret about his behavior.

After considering all the circumstances of this case, we find that a suspension from the practice of law for 18 months is appropriate. Accordingly, respondent is suspended for 18 months.

*Respondent suspended.*

MORAN, C.J., and WARD and MILLER, JJ., took no part in the consideration or decision of this case.