(Nos. 65609, 65629, 65666, 65673, 65674, 65681 cons.—

*In re* PHILIP H. CORBOY, Attorney, Respondent.—*In re* PATRICK ALAN TUITE, Attorney, Respondent.—*In re* WILLIAM D. MADDUX, Attorney, Respondent.—*In re* WILLIAM JAMES HARTE, Attorney, Respondent.—*In re* JAMES ROBERT MADLER, Attorney, Respondent.—*In re* SAMUEL V. P. BANKS, Attorney, Respondent.

*Opinion filed June 20, 1988.—Rehearing denied October 3, 1988.*

32

Daniel Drake, of Springfield, and Mary M. Klatt and James J. Grogan, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

John Powers Crowley, James R. Streicker, Matthew F. Kennelly and Margaret L. Paris, of Cotsirilos, Crowley, Stephenson, Tighe & Streicker, Ltd., of Chicago, for respondent Philip H. Corboy.

Louis B. Garippo, of Louis B. Garippo, Ltd., of Chicago, for respondent Patrick Alan Tuite.

William J. Sneckenberg & Associates, Ltd., of Chicago (William J. Sneckenberg, of counsel), for respondent William D. Maddux.

James P. Chapman & Associates, Ltd., of Chicago, for respondent William James Harte.

Jeffrey A. Kripton, Ltd., of Chicago, for respondent

James Robert Madler.

George J. Murtaugh, Jr., of Chicago, and William J. Martin, of William J. Martin, Ltd., of Oak Park, for respondent Samuel V. P. Banks.

George M. Elsener and Brian L. Crowe, both of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

Peter B. Freeman, of Chicago, and Robert F. Hanley, of Denver Colorado, for *amici curiae* Judah Best *et al.*

Sue Augustus, of Chicago, for *amicus curiae* Illinois Judges Association.

Francis D. Morrissey and Thomas F. Bridgman, both of Chicago, for *amici curiae* Richard William Austin *et al.*

Malcolm C. Rich, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

PER CURIAM: These cases involve attorneys who were each charged with violation of the Code of Professional Responsibility by reason of having made a gift or a loan to a judge. While we initially heard each of these cases separately, we have, on our own motion, consolidated them to consider in one opinion the common legal issues raised by all of these cases. The crucial common question is one of first impression in this court: What conduct constitutes giving or lending "a thing of value" to a judge so that it falls within the proscription of our Rule 7—110(a)? 107 Ill. 2d R. 7—110(a).

The Corboy, Maddux, Harte, and Madler cases all involve the payment of $1,000 by each of these attorneys to Richard LeFevour, then a judge of the circuit court of Cook County. The procedural facts in these four cases are so similar that for purposes of this opinion, they

need not be separately stated. Each of the four attorneys had become involved with LeFevour in the matter under consideration in these cases through the effort of attorney Walter Ketchum (see *In re Ketchum* (1988), 124 Ill. 2d 50). Although the personal relationship of each of these four attorneys with LeFevour is different, the facts relevant to this opinion are as follows. In December 1981, Evelyn LeFevour, mother of Judge Richard LeFevour, was in the hospital. It was, apparently, necessary to settle the hospital bill before she left the hospital for Christmas, in order for her to reenter the hospital after Christmas. Each of the four attorneys was solicited by Walter Ketchum to make out a check for $1,000, payable to Richard LeFevour, so that the hospital bill could be paid. Each of the four attorneys did as he was requested and each considered that the payment was either a gift or a loan to Evelyn LeFevour, and not a gift or a loan to Richard LeFevour. In some of the cases, it was not shown what happened to the check that had been made payable to Richard LeFevour. In one case, the record reflects that the checks were deposited in Richard LeFevour's personal checking account. A copy of a bank statement showing the activity in that account for December 19, 1981, through January 20, 1982, and copies of all checks drawn during the period were a part of the record in the Madler case. They reflect that Richard LeFevour did not draw upon that checking account to pay his mother's hospital bill. Also included in the record is a copy of a stipulation entered at the trial of Richard LeFevour in the Federal court, which states that LeFevour's brother, John LeFevour, testified that their mother died in early 1982, and that both her hospital and funeral expenses were covered by insurance.

At the time that each respondent attorney made out his check payable to Richard LeFevour, each knew that LeFevour was a judge of the circuit court of Cook

County, and that he was the presiding judge of the first municipal district of that court, although at the hearing Corboy could not recall whether at the time of the issuance of his check LeFevour was the chief judge of the traffic court or the presiding judge of the first municipal district. None of the four attorneys had ever practiced before Judge LeFevour and each had only a very limited contact with the first municipal district of the circuit court of Cook County, through occasional cases that may have been filed in that division of the court. Some of the attorneys considered the payment as a gift or an act of philanthropy to Evelyn LeFevour, whereas others considered their payment as a loan to Evelyn LeFevour; however, no promissory notes were executed and no discussion was had concerning the payment of interest. None of the money was ever repaid.

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) charged that the attorneys gave $1,000 to Richard LeFevour, the presiding judge of the first municipal district of the circuit court of Cook County. The complaints charged that each attorney was thereby guilty of conduct tending to defeat the administration of justice and to bring the legal profession into disrepute, and violative of the disciplinary rules of the Code of Professional Responsibility: Disciplinary Rule 7—110(a) (107 Ill. 2d R. 7—110(a) (giving or loaning a thing of value to a judge)), Disciplinary Rule 1—102(a)(5) (107 Ill. 2d R. 1—102(a)(5) (conduct prejudicial to the administration of justice)) and Canon 9 (107 Ill. 2d Canon 9) (avoiding even the appearance of impropriety)). The complaints filed by the Administrator prayed that each attorney should be sanctioned, as provided under our Rule 771 (87 Ill. 2d R. 771) for conduct tending to bring the court and legal profession into disrepute.

Although the procedures before the Hearing Board and the Review Board of the ARDC and the conclusions

of these bodies may have differed slightly in each of the cases, the proceedings relevant to this opinion may, generally, be stated as follows. A majority of the hearing panels found that each attorney had violated the Code of Professional Responsibility. The panels disagreed, however, on the type of discipline to be imposed. Some of the members of the panels found that the language of Disciplinary Rule 7—110(a) of the Code of Professional Responsibility is a *per se* prohibition against the giving or lending anything of value to a judge, and that, since the rule did constitute an absolute prohibition, any gift or loan which was in fact paid to the judge constituted a violation of the rule regardless of the intent of the donor. Those holding this view thought that the attorneys should be censured. Other members of the hearing panels recommended that the attorneys only be reprimanded for a technical violation of the rule. Those who dissented from the above conclusions considered that the evidence did not show that the attorneys violated any provisions of the Code of Professional Responsibility and found that Rule 7—110(a) is not a *per se* rule and that whether an attorney had violated Rule 7—110(a) depends partially upon the attorney's intent, motive and state of mind. Exceptions were filed by the Administrator and by the attorneys with the Review Board.

The Review Board initially filed a report in which a majority recommended no discipline; however, four members of the Review Board found that Rule 7—110(a) had been violated and recommended censure. The Administrator sought to file these reports with this court. The attorneys, however, moved this court to bar the filings, asserting that Supreme Court Rule 753(e)(4) (107 Ill. 2d R. 753(e)(4)) prohibits the filing of such a report with this court unless the "review board concludes that disciplinary action is required."

In granting the motion of the attorneys, this court stated: "The tendered report and recommendation of the Review Board does not represent the concurrence of at least five members of the Board recommending some form of disciplinary action by this court under Rule 771." Accordingly, this court in each case remanded the matter to the Review Board for any additional action it deemed appropriate within the scope of its authority under Supreme Court Rule 753(e)(3). 107 Ill. 2d R. 753(e)(3).

Upon remand, the Review Board filed reports and recommendations with this court, in which six members of the Board found that the attorneys had given a thing of value to a judge. The majority concluded that Rule 7—110(a) is a *per se* rule and five of the six members recommended censure. The sixth member of the majority concluded that there was a technical violation of the rule and therefore recommended that the complaint be discharged. The three remaining members dissented and rejected the *per se* application of the rule, because of their belief that such an interpretation would lead to absurd results.

Although the complaints charged the respondent attorneys with violations of Rule 1—102(a)(5) and Canon 9, the principal allegation, on which these subsidiary charges stand or fall, is that the respondents violated Rule 7—110(a). Rule 7—110(a) provides:

> "A lawyer shall not give or lend anything of value to a judge, official, or employee of a tribunal, except that a lawyer may make a contribution to the campaign fund of a candidate for such office." 107 Ill. 2d R. 7—110(a).

Rule 7—110(a) is part of Canon 7 of the Code of Professional Responsibility, which cautions that a lawyer should represent his client zealously, but within the bounds of the law. The policy objective of Rule 7—110(a) is the preservation of an independent and impartial judi-

ciary. The rule is prophylactic. It is designed not only to forestall lawyers from seeking to exercise improper influence over the judiciary, but also to eliminate even the appearance of improper influence.

The Administrator and the respondents differ as to the proper interpretation of Rule 7—110(a). The Administrator argues for a literal *"per se"* construction of the rule, absolutely prohibiting a lawyer from giving or lending anything of value to a judge. The Administrator concedes that common social courtesies are not "things of value" within the meaning of Rule 7—110(a), but denies that a lawyer can absolve himself from responsibility under the rule merely by showing an eleemosynary motive or a charitable intent.

While there are slightly different nuances to the arguments of the different respondents, the main thrust is quite similar. All argue that a *per se* interpretation of Rule 7—110(a) is unwarranted. Under the respondents' interpretation, attorney gifts or loans which are not motivated by an intent to influence, or which are not likely to influence, a judge, should be permitted. The respondents, in other words, would have the propriety of the gift turn, at least in part, upon the subjective state of the attorney's mind.

The respondents further argue that the Administrator's *per se* rule would lead to unjust and absurd consequences. A convivial meal enjoyed by long-time friends, a ride to a weekly bridge game, a gift to a close relative, or even a birthday card, would all, they contend, be "things of value" proscribed under the Administrator's interpretation of the rule. Under their interpretation, on the other hand, these would not be "things of value," because they would all be unmotivated by an intent to influence the judge who received them.

As a subsidiary argument, respondents argue that they did not "intend" to give anything of value to LeFe-

vour himself, but only intended to make a gift or loan to his mother, Evelyn LeFevour.

We find no need to decide whether Rule 7—110(a) is or is not a *per se* rule. We agree, however, with the Administrator that application of the rule does not depend upon the subjective state of the attorney's mind. If it did, the prophylactic effect of the rule would be lost, since only attorney gifts or loan which were intended to influence or may tend to influence a judge would be proscribed. Under the respondents' interpretation an attorney could, for example, give a substantial sum to a judge who was currently deciding one of his cases, so long as the attorney demonstrated that he was motivated by "compassion" or "charity." We cannot accept such an interpretation. Attorney gifts or loans to judges, even if well-intended, are simply too susceptible to abuse, and too prone to creating an appearance of impropriety.

In other contexts, we have held that evidence of dishonest intent and motive is not necessary to justify the imposition of discipline. (*In re Clayter* (1980), 78 Ill. 2d 276, 283; *In re Bloom* (1968), 39 Ill. 2d 250, 254.) Thus, even when an attorney's conduct is based upon an honest mistake, he can be subject to discipline. (*In re Young* (1986), 111 Ill. 2d 98, 103.) Evidence showing lack of a dishonest intent is usually only appropriate to determine the nature and severity of the sanction imposed. *Clayter*, 78 Ill. 2d 276; *In re Thompson* (1963), 30 Ill. 2d 560.

Moreover, this interpretation of Rule 7—110(a) is supported by the rule itself, which does not contain a specific element of intent. Rules that contain an element of intent usually use language such as "deliberately," "knowingly," "when he knows," or "intentionally." (See, *e.g.*, 107 Ill. 2d Rules 2—110(b), 2—110(b)(2), 7—101(a).) This rule has none of this language.

For these reasons, the eleemosynary motives animating the respondents, while uncontested, are irrelevant.

Moreover, the argument that the loans or gifts were actually made to Evelyn LeFevour is not supported by the record. There is no evidence that Ketchum ever represented that Evelyn LeFevour would be personally responsible for the repayment of the loan. In fact, Madler testified that Ketchum told him that Richard LeFevour wanted to be in a position to pay the hospital bill. This, in our view, was a clear solicitation of a loan to Richard LeFevour, albeit one purportedly to be used for the benefit of his mother. Moreover, the checks were made payable to Richard LeFevour. Respondents therefore knew that Richard LeFevour would receive and negotiate them.

On the other hand, we do not believe that a refusal to read a "state of mind" exception into Rule 7–110(a) need entail the absurd consequences urged by the respondents. The reason is simple. Although Rule 7–110(a) allows for no exceptions but campaign contributions, it must be read in conjunction with the Code of Judicial Conduct. The Code contains a very specific listing of the circumstances under which a judge may accept a gift or loan from a lawyer. Since it would not be reasonable to hold that a judge may accept something from a lawyer which the lawyer is not permitted to give, the Code and the rule must be read together.

The new Code of Judicial Conduct, effective January 1, 1987, expressly permits a judge or relative of a judge to accept a gift or loan from a lawyer under specific circumstances. The Code now provides:

"(4) Neither a judge nor a member of his family residing in his household should accept a gift, bequest, favor or loan from anyone except as follows:

(a) a judge may accept a gift incident to a public testimonial to him; books supplied by publishers on a complimentary basis for official use; or an invitation to the judge and his spouse to attend a bar-related

function or activity devoted to the improvement of the law, the legal system, or the administration of justice;

(b) a judge or a member of his family residing in his household may accept ordinary social hospitality; a bequest, favor, or loan from a relative; a wedding or engagement gift ***;

(c) a judge or a member of his family residing in his household may accept any other gift, bequest, favor, or loan, only if the donor is not a party or other person whose interests have come or are likely to come before him, including lawyers who practice or have practiced before the judge." 107 Ill. 2d Rules 65(C)(4)(a), 65(C)(4)(b), 65(C)(4)(c).

When Rule 65(C)(4) of the Code of Judicial Conduct is read together with Rule 7—110(a), it becomes clear that we can avoid the absurd and unfair consequences urged by the respondents without reading a requirement of dishonest motive into Rule 7—110(a). Combining the two rules, it is clear that an attorney may make a loan or gift to a judge if: the gift falls under the exceptions of subparagraph (a) set forth above, which does not appear to be relevant in this case, or if the gift or loan constitutes "ordinary social hospitality," or the attorney is related to the judge, or the gift is a wedding or engagement gift, all as provided in subparagraph (b) quoted above. The attorney may make any other gift or loan to a judge only if the attorney has not practiced and does not practice before the judge, and is otherwise unlikely to come before him (107 Ill. 2d R. 65(C)(4)(c)). Also, as provided in the Code of Professional Responsibility, an attorney may make a gift to a judge if the gift is a contribution to a judicial campaign fund. (107 Ill. 2d R. 7—110(a).) Thus, whether the respondents are guilty of an infraction depends upon whether their gifts or loans to LeFevour fall within any one of these exceptions.

We note that Rule 65(C)(4) governing judicial conduct was not in effect at the time the respondents gave money to LeFevour. The rule actually in effect was former Rule 61(c)(22), which was somewhat less specific. It provided: "A judge should not accept gifts or favors from litigants, lawyers practicing before him, or others whose causes are likely to be submitted to him for judgment." (87 Ill. 2d R. 61(c)(22).) The committee commentary to current Rule 65(C)(4) makes it clear that this rule, now modeled after Canon 5(C)(4) of the ABA Model Code of Judicial Conduct, retains the "requirements" of former Rule 61(c)(22). Although our disposition of this matter would be no different were we to decide it by reference to the language of former Rule 61(c)(22), we can discern no benefit in exhuming the former rule. To provide better guidance to Illinois lawyers, we instead look to current Rule 65(C)(4), the refined successor to Rule 61(c)(22), to flesh out the scope of Rule 7–110(a).

Of the exceptions noted above, only two are even arguably applicable. The respondents do not claim that they are related to LeFevour, that the sums were wedding or engagement gifts, or that they were campaign contributions. The only two possible exceptions are "ordinary social hospitality" and a gift or loan from a lawyer not practicing before or not likely to practice before the judge. We find that neither of these exceptions apply.

"Ordinary social hospitality" is not a self-defining concept. It is not, however, completely opaque. We believe that ordinary social hospitality consists of those routine amenities, favors, and courtesies which are normally exchanged between friends and acquaintances, and which would not create an appearance of impropriety to a reasonable, objective observer. The test is objective, rather than subjective, and the touchstone is a careful consideration of social custom. While we cannot draw any bright lines, we believe that the following factors

should be taken into account: (1) the monetary value of the gift, (2) the relationship, if any, between the judge and the donor/lender lawyer, (3) the social practices and customs associated with gifts and loans, and (4) the particular circumstances surrounding the gifts and loans.

Applying these factors, we cannot agree that the gift or loan constitutes ordinary social hospitality, nor was it intended to be considered as such. The amount of each gift or loan, $1,000, was substantial. Some of the respondents had only a nodding acquaintance with LeFevour. In each case, the loan or gift was certainly generous. But it is precisely the generosity of a $1,000 gift or loan which makes it unusual and extraordinary, rather than ordinary, social hospitality. Regardless of each respondent's charitable intent, the very size of such a gift or loan is likely to raise an appearance of impropriety.

All of these transactions are a far cry from the social dinners, gratuitous rides, birthday recognitions and gifts of books or flowers, which might be genuine instances of social hospitality, and which would not necessarily fall within the purview of Rule 7—110(a).

The only other possible exception set out in Rule 65(C)(4) of the Code of Judicial Conduct is the exception for a lawyer not practicing or likely to practice before the donee judge contained in Rule 65(C)(4)(c). None of the respondents falls within this exception.

This exception cannot be liberally construed in favor of the donor. If the nature of an attorney's practice is such that a matter in which he is involved is likely to be involved in a court proceeding, then that attorney should be prohibited from making a gift to any judge who sits on the court where the case may be heard—circuit, appellate, or supreme. The same prohibition must apply if the lawyer, though he, himself, may not be likely to have a case involved in a court proceeding, is associated in

the practice of law with another who is likely to have matters that will be so involved.

It is also not proper to rationalize a judicial gift to a judge who may sit in probate or traffic, or in the criminal division, simply because the donor only tries cases in another division of the court. Under our rules, a judge is not a permanent fixture of any division, but is subject to reassignment by the chief judge. 107 Ill. 2d R. 21(b).

It is undisputed that these respondents had cases in the circuit court of Cook County, and, in fact in the first municipal district, where Richard LeFevour was presiding judge. For the reasons given above, we do not consider LeFevour's status as presiding judge, which apparently excused him from hearing cases, as determinative. In many ways, a gift to a presiding judge raises an even stronger appearance of impropriety than a gift to a judge lower in the hierarchy. In any case, there was no assurance that LeFevour would not be transferred or demoted.

Canon 2 of the Code of Judicial Conduct now requires that a judge should avoid impropriety or the appearance of impropriety. Former Rule 61(c)(4) (87 Ill. 2d R. 61(c)(4)) contained a similar requirement. The general public would certainly consider it an appearance of impropriety if a judge were to accept a gift from a lawyer who has matters in the court on which that judge sits. Even if the matter were not to be heard by the judge to whom the gift is given, the public's perception would be one of suspicion, enhanced, no doubt, by the potential subliminal influence on the favored judge's colleagues. If, under these situations, a judge may not accept a gift, then, *a fortiori*, under Rule 7—110(a) of the Code of Professional Responsibility, the attorney may not give the gift to the judge.

Thus, if a lawyer or one with whom he is associated in the practice of law is likely to have a matter before a

court (circuit, appellate or supreme), he should not make a gift to any judge of that court, unless the gift falls within one of the exceptions listed in exception (a) or (b) of Rule 65(C)(4), set out above, or unless it falls within the exception of Rule 7—110 of the Code of Professional Responsibility, which permits a lawyer to make a contribution to the campaign fund of a candidate for a judicial position.

For the foregoing reasons, we hold that these four respondents violated Rule 7—110(a). However, we hold that we cannot censure any of these respondents for their conduct. They acted without the guidance of precedent or settled opinion, and there was, apparently, considerable belief among members of the bar that they had acted properly. See *In re Friedman* (1979), 76 Ill. 2d 392; *In re Luster* (1957), 12 Ill. 2d 25.

We have only today held for the first time that Rule 7—110(a) must be read in conjunction with the Code of Judicial Conduct and specified the limitations of Rule 65(C)(4) of that Code. It is clear from the rule, as we have construed it, that this type of behavior on the part of lawyers in this State will result in violation of Rule 7—110(a). It would be unfair to apply the limitation we have today for the first time defined to respondents' conduct in 1981.

The draft of a proposed revision of our Code of Professional Responsibility, which has recently been presented to this court by its committee, and on which input has been sought from the various bar associations and from attorneys, has made no change in the wording of our Rule 7—110(a). However, Rule 1—102 of the proposed draft adds two restrictions on the conduct of an attorney not found in the present limitations of Rule 1—102 (see 107 Ill. 2d R. 1—102). The draft now provides, in addition to the five limitations set out in the present

rule as subparagraphs 1 through 5, additional limitations numbered subparagraphs 6 and 7 as follows:

"Rule 1—102. Misconduct

(a) A lawyer shall not:

\* \* \*

(6) state or imply an ability to influence improperly any tribunal, legislative body, government agency or official; or

(7) assist a judge or judicial officer in conduct that the lawyer knows is a violation of applicable rules of judicial conduct."

Thus, proposed Rule 1—102(a)(7) recognizes the Code of Judicial Conduct as a limitation on the conduct of attorneys. However, so that the limitation may be clear in the area we are now discussing in this case, we hereby amend Rule 7—110(a) of the Code of Professional Responsibility. Effective as of the date of this opinion, that rule shall provide:

"(a) A lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal except those gifts or loans which a judge or a member of his family may receive under Rule 65(C)(4) of the Code of Judicial Conduct, except that a lawyer may make a contribution to the campaign fund of a candidate for such office."

These four respondents are outstanding attorneys. Considerable testimony was presented before the hearing panel concerning their philanthropic and charitable contributions. These respondents have been active in charitable and legal organizations and have each worked diligently to enhance the good name of the legal profession.

For the foregoing reasons, the complaints against respondents Corboy, Maddux, Harte and Madler are discharged.

As to the respondents Banks and Tuite, a different factual picture is presented. Both of these respondents

practiced primarily in the area of criminal law. Both of these respondents were long-time personal friends of Richard LeFevour, and both of the respondents were well acquainted with LeFevour's wife and family. Although both of the respondents' offices had cases pending in the first municipal district of the circuit court of Cook County, neither of the respondents tried any cases before Judge LeFevour.

In addition to the above, Judge LeFevour's son, Terrence LeFevour, has worked in respondent Banks' law firm since 1979, first as a law student and later as a lawyer. Thus, under our Rule 63(C)(1)(e)(ii) (107 Ill. 2d R. 63(C)(1)(e)(ii)), Judge LeFevour may have been disqualified from hearing cases in which respondent Banks' law firm was involved. However, according to the committee comments to this section of Rule 63, this affiliation would not, of itself, have disqualified the judge from hearing cases involving the Banks law firm.

In April 1981, Richard LeFevour went to see respondent Banks and told the respondent that he needed a short-term loan to "straighten out some tax problems." He requested a loan of $2,500. Banks did not ask LeFevour to pay interest on the loan or to sign a promissory note. About a year later, in April 1982, LeFevour again approached respondent for a loan of $2,000, again stating he needed the money for taxes. Before loaning LeFevour more money, the respondent reminded him that he already owed him money and asked when he would be repaid. LeFevour told the respondent that he would be repaid from the proceeds of the LeFevour home, which the respondent knew was for sale. Banks then wrote a check for $2,000 to LeFevour. LeFevour has not repaid Banks for either of these loans.

In August 1982, LeFevour called respondent Tuite and requested him to come to LeFevour's office. During this meeting, LeFevour asked the respondent if he could

lend him $5,000 for 60 days to help LeFevour pay taxes. The respondent agreed to make the loan and later delivered a check for $5,000 to LeFevour. No discussion as to whether interest was to be paid on the loan was had and no promissory note was executed. It was understood that the loan would be for 60 days. However, LeFevour did not repay the loan, although the respondent requested him to do so on several occasions. Following his indictment in December 1984, LeFevour requested the respondent to represent him in the criminal proceedings. The respondent agreed to do so only if LeFevour would pay him the $5,000. Shortly thereafter, LeFevour paid the respondent the $5,000 on the loan. During this period of time, respondent Tuite, or his law firm, had numerous cases pending in the first municipal district of the circuit court of Cook County. These cases were generally misdemeanors, felony preliminary hearings and traffic cases.

Complaints were filed against respondents Tuite and Banks by the Administrator of the Attorney Registration and Disciplinary Commission, charging each respondent with violation of Rule 7—110(a) (87 Ill. 2d R. 7—110(a) (a lawyer shall not give or lend any thing of value to a judge)). In respondent Tuite's case, the Hearing Board found that the loan was not made with intent to influence the judge in any way, but was made at the request of the judge and was made to the judge as a "professional and social friend." The Hearing Board further found that respondent Tuite's actions did not in any way defeat the administration of justice or bring the courts or legal profession into disrepute. However, the Hearing Board viewed the prohibition of Rule 7—110(a) as absolute and recommended a private reprimand. The Review Board issued a report, as it did in the cases of the respondents Corboy, Maddux, Harte and Madler, in which a majority of the Board did not vote to impose any disci-

pline. This court ruled that the report could not be filed. In response to that ruling, the Review Board issued a modified decision in which a majority of the Review Board recommended that the respondent Tuite be censured.

In case of respondent Banks, the Hearing Board found that Banks had committed a technical violation of Rule 7—110(a), but that his conduct was not prejudicial to the administration of justice. The Hearing Board found that the loans were not made to a judge before whom Banks had any cases pending, and were not made to influence or gain favor with a judge, but were made out of friendship and generosity; the long-standing social relationship between Banks and LeFevour was the main motivating factor in making the loans. The Hearing Board found that Rule 7—110(a) was an absolute ban on the giving or lending of anything of value to a judge and recommended that respondent Banks be reprimanded. The Review Board affirmed the Hearing Board's conclusion that Rule 7—110(a) is an absolute ban on the giving or lending of anything of value to a judge. Five members of the Review Board recommended that respondent Banks be censured.

Here, as in the cases of respondents Corboy, Maddux, Harte and Madler, respondents Tuite and Banks were sailing in uncharted waters. In fact, the record discloses that these respondents were not aware of the prohibition of Rule 7—110(a) and certainly could not have been aware of the construction that we have, for the first time, placed on that rule in this opinion. Neither of these respondents practiced before Judge LeFevour, although both had cases pending in the first municipal district of the circuit court of Cook County, over which Judge LeFevour presided. These respondents made these loans to a long-time personal friend, with no thought of influencing nor gaining favor with the judge. Although the re-

spondents' conduct would constitute a violation of Rule 7—110(a) under the construction we have today placed upon that rule, such conduct would not constitute a violation under a more liberal construction of what constitutes "practice before a judge" under Rule 65(C)(4)(c) (107 Ill. 2d R. 65(C)(4)(c)).

Unlike the facts in Corboy, Maddux, Harte and Madler, respondents Tuite and Banks did intend to make a loan directly to Richard LeFevour. However, for the same reasons that we find it inappropriate to impose sanctions in the previously discussed cases, we deem it inappropriate to impose sanctions against Tuite and Banks.

For the reasons stated herein, all of the respondents are discharged.

*Respondents discharged.*

JUSTICE STAMOS took no part in the consideration or decision of this case.