(No. 66514.—)

*In re* OSCAR O. D'ANGELO, Attorney, Respondent.

*Opinion filed December 15, 1988.—Rehearing denied January 30, 1989.*

James J. Grogan and Naomi J. Woloshin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Philip W. Tone, William D. Heinz and Robert P. Zapinski, of Jenner & Block, and Milton H. Gray, of Altheimer & Gray, of Chicago, for respondent.

JUSTICE RYAN delivered the opinion of the court:

During 1984 and 1985, Richard LeFevour, then presiding judge of the first municipal district of the circuit court of Cook County, became the subject of a Federal criminal investigation. During that period, respondent Oscar D'Angelo met with the United States Attorney concerning Avis car rentals that he had provided for LeFevour. Subsequently, respondent admitted to having provided Avis car rentals as "gifts" to several judges, including LeFevour, as well as numerous elected and appointed officials in the city of Chicago. Based on this information, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a 15-count complaint against respondent, charging that he had violated Rules 1—102(a)(4), 1—102(a)(5), 7—110(a), and Canon 9 of the Illinois Code of Professional Responsibility (107 Ill. 2d Rules 1—102(a)(4), 1—102(a)(5), 7—110(a), Canon 9) and Supreme Court Rule 771 (107 Ill. 2d R. 771).

A three-member hearing panel found that respondent had engaged in professional misconduct, but disagreed as to the appropriate sanction: one member recommended disbarment, one a suspension, and one a private reprimand. The respondent filed exceptions to the hearing panel's report, but the Review Board unanimously

determined that respondent's violations were egregious and recommended a two-year suspension. The Administrator petitioned for leave to file exceptions with this court, asking that respondent be disbarred. Respondent filed his exceptions to both the report and the recommendation of the Review Board.

The facts in this matter are essentially undisputed. The issues before this court are whether respondent's conduct warrants discipline and, if so, what sanction is appropriate.

Respondent was admitted to practice law in Illinois in 1959. After spending a number of years with other law offices, he joined the firm of Friedman and Koven as a partner in 1973 or 1974. Due to the recent dissolution of Friedman and Koven, respondent is currently a partner with the firm of Altheimer and Gray.

During his tenure with Friedman and Koven, respondent concentrated his practice primarily in commercial real estate, municipal law, and public financing. In addition, respondent and other members of his family were actively purchasing and developing various real estate properties in the city of Chicago. Respondent was also involved with several community and public interest groups concerned about blight and neighborhood preservation, donating many hours of *pro bono* work to these organizations. Although respondent rarely served as a trial attorney during his association with Friedman and Koven, other lawyers from the firm regularly represented clients before the circuit court of Cook County.

When respondent joined Friedman and Koven, he brought with him as clients the University of Chicago, Rush-Presbyterian-St. Luke's Hospital, and Avis Rent-A-Car Systems, Inc. (Avis). Avis had been respondent's client for quite some time, and through Avis, respondent began a practice of reserving rental cars for family friends, judges of the Cook County circuit court, and

public officials of the city of Chicago. The requests for car rentals increased after respondent joined Friedman and Koven, and problems arose with the *ad hoc* system that was used to reserve automobiles. In an effort to remedy this situation, respondent met with officials from Avis, and received authorization from them to issue Avis Company Travel Orders (ACTO). An ACTO enabled the recipient to receive a specific automobile and ensured that the particular car chosen would be waiting at a given location at the appointed time. An ACTO also made Friedman and Koven the guarantor of payment for the rental should the recipient fail to pay. Typically, the recipient of the ACTO would not pay for the rental, and Avis would then look to Friedman and Koven for payment. Friedman and Koven would satisfy Avis' bill and then debit respondent's personal firm account. Respondent rarely asked the ACTO recipient to reimburse him for the rentals. Consequently, respondent provided rental cars free of charge to numerous public officials and judges.

One of the judges who received free rental cars was Cook County Circuit Judge Richard LeFevour. At the time he received the rentals, LeFevour was presiding over extensive litigation between the city of Chicago and several automobile rental companies, including Avis. Respondent represented Avis in this case. The city had sued Avis and the others over liability for unpaid parking tickets which had been left upon illegally parked rental cars. The case eventually reached this court (*City of Chicago v. Hertz Commercial Leasing Corp.* (1978), 71 Ill. 2d 333), which ruled in favor of the city, holding Avis liable for the tickets. After an unsuccessful petition for writ of *certiorari* to the United States Supreme Court (*Avis Rent-A-Car Systems, Inc. v. City of Chicago* (1978), 439 U.S. 929, 58 L. Ed. 2d 322, 99 S. Ct. 315), the case re-

turned to the circuit court of Cook County and was assigned to LeFevour.

Numerous pretrial conferences were held between the parties, some of which took place in LeFevour's chambers. In November 1981, after several unsuccessful attempts to reach a compromise, the city moved to go to trial. Avis countered with a motion to dismiss. LeFevour told both parties that he would be out of town for a few weeks, but would rule on both motions in the very near future. LeFevour, however, had never ruled on either motion when he left the bench in mid-1984.

Between April 1982 and May 1984, LeFevour obtained rental car reservations from respondent on six different occasions. Although at one point respondent questioned LeFevour regarding payment for the rentals, respondent paid for all of the charges, totalling over $2,500. At no time did respondent take any formal steps to collect from LeFevour for these rentals, nor did he inform opposing counsel in the parking ticket litigation that he was providing rentals for LeFevour. Respondent never sought a substitution of judge.

In addition to LeFevour, respondent also arranged and paid for several car rentals for Cook County Circuit Judge James Murphy. Like LeFevour, Murphy never paid for any of the rentals; instead, respondent took care of the bills, which totalled over $1,000. Murphy presided over matters involving some of respondent's clients, including Avis. Also, Murphy was regularly contacted by Friedman and Koven employees regarding jury summonses that the firm's clients received. A note to respondent from his secretary concerning one of Murphy's rental invoices read as follows:

"Mr. D'Angelo:

Just a reminder—This bill is for Judge James Murphy—the judge who takes care of our numerous jury summonses for Maybrook and California."

In 1984, respondent secured a car reservation for Cook County Circuit Judge Richard Jorzak. Although the judge testified before the ARDC hearing panel that he was unaware that respondent had paid for the rental, Friedman and Koven records show that the firm had debited respondent's personal account for $458.93 as payment for Judge Jorzak's Avis invoice. Sometime prior to receiving the rental, Judge Jorzak had dismissed a case that the city had brought against respondent concerning a code violation in one of respondent's properties.

Former judge John Hechinger, who was presiding judge of the chancery division of the circuit court of Cook County, obtained three Avis rentals through respondent. During the time these rentals were effected, Friedman and Koven attorneys would appear before Judge Hechinger. Although the judge claims to have repaid respondent, he offered no documentation substantiating any reimbursement.

At least two other Cook County judges received car rentals from respondent. Former circuit judge Allen Rosin rented Avis automobiles through respondent, and one rental, in the sum of $418.42, was paid by respondent. Respondent also paid for an Avis rental of approximately $200 for his longtime friend, Circuit Judge Frank Siracusa.

Finally, having regular contact with numerous elected and appointed officials of the city of Chicago (partially because of his real estate holdings, and partially because of the nature of his law practice), respondent, during the years 1980-84, provided Avis car rentals to the following:

Richard J. Brzeczek—Superintendent of Police;
Gilbert J. Cataldo—commissioner, Department of Housing;
William L. Duggan—commissioner, Department of Housing;

Anthony N. Fratto—comptroller, Department of Budget;

Edwin A. Gausselin—first deputy corporation counsel, Department of Law;

Thomas Kapsalis—commissioner, Department of Aviation;

John W. McCaffrey—chief assistant corporation counsel, Revenue Division, Department of Law;

Herman Moses—director of licensing, Department of Inspectional Services;

Martin Murphy—chairman of the Commission on Urban Renewal;

Timothy D. O'Hara—chief assistant corporation counsel, Torts Division, Department of Law;

Eugene Ray—alderman, city of Chicago;

Miguel A. Santiago—alderman and chairman of the housing committee, city of Chicago;

David F. Schultz—budget director, Office of Budget and Management;

Henry F. Weber—assistant corporation counsel, Department of Law.

The value of these rentals was more than $8,000. Respondent paid for many of these rentals.

Friedman and Koven's executive committee decided to halt the practice of issuing Avis Company Travel Orders to judges and public officials. This occurred in 1985 when the payment of car rentals for Richard LeFevour appeared in the newspapers in conjunction with LeFevour's criminal prosecution. The resulting adverse publicity for the firm put an end to respondent's car rental activities.

In examining these activities, the Review Board of the ARDC found that the grave nature of respondent's conduct warranted a two-year suspension from the practice of law. While we give the Board's recommendations due deference, we note that final responsibility for determining the appropriate sanction in attorney disciplinary cases rests with this court. (*In re Harris* (1982), 93 Ill.

2d 285, 291-92; *In re Hopper* (1981), 85 Ill. 2d 318, 323-24.) Each disciplinary case is unique and must be evaluated based on the particular set of facts presented. (*In re Leonard* (1976), 64 Ill. 2d 398, 404; *In re O'Hallaren* (1976), 64 Ill. 2d 426, 433.) The purpose of discipline is not to punish the attorney, but to protect the public and to maintain the integrity of the judicial system. *In re Pappas* (1982), 92 Ill. 2d 243, 247; *In re Neff* (1980), 83 Ill. 20, 25.

The integrity of the judicial system is at the heart of the most serious charge against the respondent, and the one upon which the other subsidiary charges stand. By arranging and paying for rental cars for several judges, respondent was found to have violated Disciplinary Rule 7—110(a), which, as amended in *In re Corboy* (1988), 124 Ill. 2d 29, states:

> "(a) A lawyer shall not give or lend any thing of value to a judge, official, or employee of a tribunal except those gifts or loans which a judge or a member of his family may receive under Rule 65(C)(4) of the Code of Judicial Conduct, except that a lawyer may make a contribution to the campaign fund of a candidate for such office." *In re Corboy*, 124 Ill. 2d at 46.

In *In re Corboy*, we added the language in Rule 7—110(a) which refers to Rule 65(C)(4) of the Code of Judicial Conduct. Thus, in addition to contributing to a judge's campaign fund, a lawyer may also give or lend something of value to a judge which the judge is permitted to accept under Rule 65(C)(4). Rule 65(C)(4) states:

> "(4) Neither a judge nor a member of his family residing in his household should accept a gift, bequest, favor, or loan from anyone except as follows:
>
> > (a) a judge may accept a gift incident to a public testimonial to him; books supplied by publishers on a complimentary basis for official use; or an invitation to the judge and his spouse to attend a bar-related function or activity devoted to the improvement of

the law, the legal system, or the administration of justice;

(b) a judge or a member of his family residing in his household may accept *ordinary social hospitality*; a gift, bequest, favor, or loan from a relative; a wedding or engagement gift; a loan from a lending institution in its regular course of business on the same terms generally available to persons who are not judges; or a scholarship or fellowship awarded on the same terms applied to other applicants;

(c) a judge or a member of his family residing in his household may accept any other gift, bequest, favor, or loan *only if the donor is not a party or other person whose interests have come or are likely to come before him*, including lawyers who practice or have practiced before the judge." (Emphasis added.) 107 Ill. 2d R. 65(C)(4).

Subsection (a) of this rule is obviously inapposite. Whether subsection (b) applies turns on whether the providing of rental cars to judges is "ordinary social hospitality." In *In re Corboy* we said:

" 'Ordinary social hospitality' is not a self-defining concept. It is not, however, completely opaque. We believe that ordinary social hospitality consists of those routine amenities, favors, and courtesies which are normally exchanged between friends and acquaintances, and which would not create an appearance of impropriety to a reasonable, objective observer. The test is objective, rather than subjective, and the touchstone is a careful consideration of social custom. While we cannot draw any bright lines, we believe that the following factors should be taken into account: (1) the monetary value of the gift, (2) the relationship, if any, between the judge and the donor/lender lawyer, (3) the social practices and customs associated with gifts and loans, and (4) the particular circumstances surrounding the gifts and loans." (*In re Corboy*, 124 Ill. 2d at 42-43.)

Viewing respondent's gifts to the judges in this case, it is clear that car rentals worth hundreds or thousands of

dollars could not, under any circumstances, be "ordinary social hospitality" within the purview of Rule 65(C)(4)(b).

Finally, we hold that these car rentals are not permissible under subsection (c) of Rule 65(C)(4), because we find that respondent and other Friedman and Koven attorneys had interests which were before or likely to come before the judges in question. Respondent represented Avis in extensive litigation before Judge LeFevour at the time he supplied Avis rentals to the judge. Similarly, Friedman and Koven's diverse practice required its attorneys to appear before numerous members of the Cook County judiciary. As a partner in Friedman and Koven, respondent stood to gain from these appearances by his firm's employees, and therefore had an interest, albeit an indirect one, before these judges. Moreover, it cannot be argued that these car rentals were permissible gifts simply because respondent did not appear personally before some of the judges in question. "It is *** not proper to rationalize a judicial gift to a judge who may sit in probate or traffic *** simply because the donor only tries cases in another division of the court. Under our rules, a judge is not a permanent fixture of any division, but is subject to reassignment ***." *In re Corboy*, 124 Ill. 2d at 44.

Having determined that respondent's "gifts" to these judges were not permissible under any of the exceptions provided by Rules 7—110(a) and 65(C)(4), we find that respondent violated Rule 7—110(a). We further find that by these actions respondent has violated Rule 1—102(a)(4) (engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation) and Rule 1—102(a)(5) (engaged in conduct that is prejudicial to the administration of justice) of the Illinois Code of Professional Responsibility (107 Ill. 2d Rules 1—102(a)(4), (a)(5)). Finally, respondent also contravened our Supreme Court Rule 771,

because his activities brought the court and the legal profession into disrepute. 107 Ill. 2d R. 771.

Respondent's behavior involving the judges also violated Canon 9 of the Illinois Code of Professional Responsibility, which states, "A lawyer should avoid even the appearance of professional impropriety" (107 Ill. 2d Canon 9). In *In re Powell* (1988), 126 Ill. 2d 15, the propriety of a charge of the general violation of Canon 9 was raised. In *Powell*, this court stated:

> "We believe that Canon 9 is not a standard of discipline in itself but expresses the policy considerations underlying the disciplinary rules contained within Canon 9. While respondent's conduct was not only improper but also created the appearance of impropriety, we nevertheless conclude that Canon 9 does not afford a basis for imposing sanctions independent of an allegation and proof of a violation of one of the disciplinary rules contained within the canon." (*In re Powell* (1988), 126 Ill. 2d at 29-30.)

Nevertheless, by fashioning himself a travel agent for judges and at least 14 elected or appointed officials of the city of Chicago, respondent gave the impression of one trying to influence decisionmakers in all areas of city and county government. While some may view "clout" as an acceptable means of doing business, we will not condone or tolerate this type of activity. Attorneys are officers of the court. (*In re Zisook* (1981), 88 Ill. 2d 321, 331.) As such, an attorney's professional conduct must be above reproach.

The only remaining issue, therefore, is what sanction is appropriate in this case. The nature and severity of a sanction imposed for a violation of Rule 7—110(a) depends on the intent and motive of the attorney being disciplined. (*In re Ketchum* (1988), 124 Ill. 2d 50, 57-58.) Intent and motive are rarely revealed in direct testimony, but rather must be inferred from conduct and surround-

ing circumstances. (*In re Schwartz* (1972), 51 Ill. 2d 334, 336.) In the case before us, it is obvious from respondent's conduct that his intent was to curry favor for himself and his firm not only from several judges, but from various Chicago officials as well. The facts in this case do not set forth isolated instances of misconduct; respondent's behavior was long-standing, continuous, and widespread. Respondent, on behalf of judges and public officials, paid more than $10,000 for over a decade's worth of rental charges. Furthermore, the pattern of malfeasance here demonstrates that respondent chose the recipients of his generosity carefully to coincide with the needs of his and his firm's practice. The record before this court leaves no room for doubt as to the seriousness of respondent's actions.

We note that respondent's conduct here is similar to that found in *In re Ketchum* (1988), 124 Ill. 2d 50. In that case, Walter Ketchum, an attorney, loaned a total of $9,300 over several years to Judge Richard LeFevour. Although there was no direct proof that LeFevour had advanced Ketchum's interests in any way, the clear evidence of impropriety led this court to suspend Ketchum for two years. Unlike Ketchum, however, respondent in this case was not content to focus his attention on one judge; instead, he sought favor with no fewer than 6 judges and 14 public officials. Consequently, we view respondent's transgressions as much more egregious than that shown in *In re Ketchum*.

Respondent contends that the ABA Standards for Imposing Lawyer Sanctions (1986) (ABA Standards), cited with approval by this court in *In re Cheronis* (1986), 114 Ill. 2d 527, suggest only censure or private reprimand as the appropriate discipline for his conduct. While not passing on the persuasiveness of the ABA Standards in this jurisdiction, we find that the sections cited us by the respondent do not accurately define the misconduct re-

spondent engaged in. Indeed, we find nothing in the ABA Standards that is helpful or instructive in this case.

Respondent further contends that his history of extensive public service and *pro bono* work should serve to mitigate his conduct. While we are not unmindful of respondent's reputation in the community, we do not see how this could in any way offset his failings. On the contrary, we feel that respondent's misconduct merits a more severe sanction than the suspension recommended by the Review Board. Accordingly, respondent is disbarred from the practice of law.

*Respondent disbarred.*