(No. 65387.—)

*In re* NATHAN N. POWELL, Attorney, Respondent.

*Opinion filed December 15, 1988.—Rehearing denied January 30, 1989.*

STAMOS, J., took no part.

William C. Cunningham, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Harry J. Busch and Sidney Z. Karasik, both of Chicago, for respondent.

Malcolm C. Rich, of Chicago, for *amicus curiae* Chicago Council of Lawyers.

JUSTICE MILLER delivered the opinion of the court:

In June 1986, the Administrator of the Attorney Registration and Disciplinary Commission filed a complaint charging the respondent, Nathan N. Powell, with professional misconduct in connection with a loan that he helped procure for Judge Reginald J. Holzer. A panel of the Hearing Board found against respondent on five of the six charges of misconduct and recommended that he be disbarred. The respondent filed exceptions to the Hearing Board's report and recommendation. The Review Board concurred with the Hearing Board, and respondent filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

Respondent was licensed to practice law in this State in 1934, and is now 77 years old. At the time of the loan in question, respondent had known Holzer casually for approximately 18 years. The two men belonged to the

same lodge and would occasionally see one another at various functions. Respondent testified, however, that he and Holzer were not personal friends.

In 1978, respondent was retained by Harry Wohl to defend a suit that had been brought against Wohl for an accounting and damages. The lawsuit (Nelson v. Wohl (Cook Co. Cir. Ct.), No. 78—CH—8350) was assigned to Judge Holzer. On December 22, 1978, respondent entered his appearance for Wohl and also filed an answer and counterclaim. On March 2, 1979, the plaintiff, Nelson, moved for a disbursement of funds allegedly due from Wohl. The motion was set by Holzer for hearing on March 12, 1979.

On March 5, one week prior to the scheduled hearing, Holzer telephoned the respondent and asked him to come to Holzer's chambers. Upon respondent's arrival, Holzer appeared agitated and asked respondent if he was still representing a bank. Respondent replied that he was. Holzer then explained that he was overdrawn at his own bank and needed a $10,000 loan. When respondent asked the judge whether he had collateral, Holzer replied that he did not. Respondent then told Holzer that without collateral there was nothing respondent could do. Holzer told respondent that he was in desperate need of money and that respondent had to help him obtain a loan. Again respondent replied that he did not think he could help with a loan unless the judge had collateral. After further pressure from Holzer, respondent said he would see what he could do.

Respondent left Holzer's chambers and returned to his own office, where he considered Holzer's request. Respondent testified that when he left for home that evening he was still undecided on how to handle the situation. Later that evening, respondent concluded he did not have sufficient funds of his own to pledge as collateral for a loan to Holzer. Respondent then contacted his

client, Harry Wohl, whose case was pending before Holzer, and arranged to meet with Wohl the next morning. At their meeting on the morning of March 6, 1979, respondent asked Wohl if Wohl could post a certificate of deposit as collateral for a $10,000 loan for Holzer at Lincoln National Bank. Wohl assented to this request, saying: "Nate, I'll do anything you ask me to do."

Respondent then contacted Robert Maram, a Lincoln National Bank loan officer, to arrange the loan for Judge Holzer. Respondent next telephoned Holzer and told him to see Maram about the loan. Respondent testified that he told Holzer that the loan had collateral but that he did not say who provided it. On March 9, 1979, the collateral having been posted, the loan for $10,000 to Holzer was completed. Four days later, on March 13, 1979, Holzer ruled in Wohl's favor and denied Nelson's motion for disbursement of funds. Respondent informed neither his opponents, nor Paul Flaherty, his co-counsel, of the transaction. The case was ultimately settled by agreement of the parties.

The Administrator filed a complaint against respondent, alleging that respondent had engaged in professional misconduct by arranging for his client to post collateral for a loan to Holzer, before whom respondent and his client had a pending case. The complaint charged that respondent's actions had violated Disciplinary Rule (DR) 7—110(A) (giving or lending a thing of value to a judge); DR 1—102(A)(2) (circumventing a disciplinary rule through the actions of others); DR 1—102(A)(3) (engaging in illegal conduct involving moral turpitude); DR 1—102(A)(5) (engaging in conduct that is prejudicial to the administration of justice); DR 1—103(A) (failing to report knowledge of a violation of DR 1—102(A)); and Canon 9 (failing to avoid the appearance of professional impropriety). Illinois Code of Professional Responsibility (rev. 1977) (hereinafter the Code).

At the hearing, there was no dispute as to respondent's involvement in the loan to Holzer or the circumstances surrounding the transaction. The Administrator and respondent, however, disagreed on respondent's motive in arranging the loan and on respondent's knowledge of the impropriety of his actions.

Before the hearing panel, respondent contended that he was motivated by sympathy for Holzer and that he had no thought of influencing the judge. Respondent testified that he had always considered Holzer to be a good judge and a gentleman. Respondent further stated that Holzer's demeanor had affected him and that he felt sorry for the judge and his family. Moreover, respondent claimed that, when deciding to help Holzer, he gave no thought to any consequence that refusing Holzer's request might have on the case then pending before the judge.

Other portions of respondent's testimony, however, were inconsistent with respondent's assertion of charitable motives and his claim that before arranging the loan he gave no consideration to the effect refusing Holzer might have on the pending case. Respondent testified that he resented Holzer's asking him for help since the two men were not particularly close. Respondent said that he felt victimized by Holzer's request, and, when asked to explain what he meant, respondent answered:

> "I meant to the extent that I thought that I had a good case for Mr. Wohl. It was Mr. Wohl that was going to suffer. Maybe he was going to be made a victim through me; that the judge could have felt that this was something that I should have done for him. I didn't do it and now I'm going to show you."

Respondent's testimony from Holzer's trial was admitted into evidence and contained a similar explanation for respondent's decision to help Holzer. At Holzer's trial, respondent stated:

"Well, as I best recall my mental processes at the time, I had two concerns. I think the foremost concern that I had is, could I help the Judge. Was there anything that I could do to help him. And, of course, the other was, well, if I didn't, would that in any manner at all have any effect upon the proceedings that were pending before him."

In addition to respondent's inconsistent testimony concerning his motives, there was also conflicting evidence concerning respondent's awareness of the prohibition against gifts and loans to judges. Respondent testified that it never occurred to him that his assistance to Holzer was unethical or that it violated any code of professional conduct. However, respondent also testified that when Holzer asked for his help he felt victimized because he could not rationalize what he was doing with the fact he had a case pending before Holzer. Moreover, at Holzer's trial, respondent explained that he decided against telling co-counsel, Paul Flaherty, about the transaction because he knew Flaherty to be a man of good character and he feared Flaherty would withdraw from the case if he learned of the loan to Holzer.

Based on the evidence presented, the Hearing Board found against respondent on five of the six charges brought by the Administrator. The Hearing Board believed that respondent's testimony that he felt victimized by Holzer's request indicated that he knew that his conduct was in violation of the Code. The Hearing Board also found that respondent had arranged the loan, in part, because he was concerned about the effect the failure to do so would have on the pending case. The Board further found that respondent had attempted to "curry favor with the Judge for himself and his client." The Board then concluded that respondent had circumvented a disciplinary rule through another's actions in violation of DR 1—102(A)(2); engaged in conduct prejudicial to the

administration of justice in violation of DR 1—102(A)(5); engaged in illegal conduct involving moral turpitude in violation of DR 1—102(A)(3); failed to report knowledge of a violation of DR 1—102 in violation of DR 1—103(A); and failed to avoid even the appearance of impropriety in violation of Canon 9. The Hearing Board, however, did not find that respondent had given or lent a thing of value to a judge in violation of DR 7—110(A). The Board then recommended that respondent be disbarred.

The Review Board concurred in the Hearing Board's report and recommendation and found that misconduct was shown by clear and convincing evidence. The Review Board, in reciting the Hearing Board's decision, mistakenly stated that respondent had been found guilty of violating DR 7—110(A). The Review Board stated: "Respondent's actions were calculated, wrong and cancerous to our system of justice. They resulted in the outright purchase of a judicial ruling. Akin to Esau before him, he sold his professional birthright for a bowl of Judge Holzer's gruel. His conduct is shocking and we concur in the recommendation of the Hearing Panel that Respondent be disbarred." One member of the Review Board agreed with the finding of misconduct, but felt that respondent should be suspended for three years. Respondent filed exceptions to the Review Board's report, and before this court contests both the finding of professional misconduct and the recommended discipline.

Initially, respondent asserts that his conduct did not constitute a violation of DR 1—102(A)(2), which prohibits circumventing a disciplinary rule through the actions of others. Respondent acknowledges that the rule he was found to have circumvented through another's actions is DR 7—110(A) (giving or lending a thing of value to a judge). Respondent does not dispute that while he had a case pending before Holzer he asked his client to post the collateral necessary to secure a $10,000 loan for the

judge. Respondent claims, however, to have acted out of compassion for Holzer and not out of corrupt or dishonest motives. Respondent therefore urges us to read a corrupt intent requirement into DR 7—110(A) and thereby indirectly into the rule against its circumvention, DR 1—102(A)(2).

Respondent suggests two reasons why we should require the existence of a corrupt mental state for a violation of DR 7—110(A).

First, respondent argues that unless DR 7—110(A) is interpreted to include a corrupt intent requirement, it violates the equal protection clauses of both the Federal and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2). Respondent contends that, because the rule prohibits personal gifts or loans to judges but contains an exception for contributions to judges' campaign funds, DR 7—110(A) discriminates against the class of attorneys who make personal gifts or loans to judges with no intent to influence the judges' decisions. Respondent argues that while attorneys in this class may be sanctioned for making such gifts or loans, attorneys who make contributions to judges' campaign funds are not similarly subject to disciplinary action. Respondent asserts that there is no reasoned basis for the different treatment of the two classes of attorneys, since both personal gifts and campaign contributions are capable of influencing the conduct of a judge. Respondent concludes that only by reading a corrupt intent requirement into the rule can the campaign contribution exception be justified, and the alleged constitutional infirmity cured.

Second, respondent argues that the purpose of DR 7—110(A) favors an interpretation of the rule which includes a requirement of a corrupt mental state. Respondent asserts that the purpose of DR 7—110(A) is to preserve the fairness and impartiality of the court and to prevent the purchase of judicial rulings. Respondent rea-

sons that because of the rule's purpose, only those gifts or loans given or made with an intent to influence a judge's decisions should be prohibited.

Before examining respondent's arguments in favor of interpreting DR 7—110(A) to include a mental state requirement, we observe that such an interpretation would not affect the result in this case. The Hearing Board panel found that in arranging the loan for Holzer "respondent was attempting to curry favor with the Judge for himself and his client." Respondent testified twice, once at Holzer's trial and once at his own disciplinary hearing, that he arranged the loan, in part, because he feared that the failure to do so would adversely affect the case then pending before Holzer. While respondent also testified that he was acting out of compassion for Holzer, the panel rejected this explanation for respondent's conduct. Because the panel was better able to observe respondent's demeanor, judge his credibility and evaluate his conflicting testimony, and the record supports the finding, we accept the panel's finding on respondent's mental state. (See *In re Wigoda* (1979), 77 Ill. 2d 154, 158.) Therefore, under any analysis of DR 7—110(A), we conclude that respondent circumvented the rule's prohibition against gifts or loans to judges by having his client lend Holzer the collateral to secure a $10,000 loan.

Because respondent's actions in arranging the loan for Holzer were calculated to have an effect on the case pending before the judge, we conclude respondent lacks standing to raise his constitutional claim. To raise an equal protection argument, the party must be a member of the class against whom the rule allegedly discriminates. (See *People v. Tosch* (1986), 114 Ill. 2d 474, 482.) Respondent, however, does not belong to the group which he contends DR 7—110(A) discriminates against, namely those attorneys who make personal gifts to

judges with no improper motive. Because respondent has no standing to raise the constitutional claim, we have no reason to address the argument.

We turn next to respondent's second mental state argument in which he asserts that the purpose behind DR 7—110(A) indicates that only gifts or loans designed to influence a judge should be prohibited. In *In re Corboy* (1988), 124 Ill. 2d 29, 38, we rejected this argument, explaining that the prohibition against gifts of loans to judges "is designed not only to forestall lawyers from seeking to exercise improper influence over the judiciary, but also to eliminate even the appearance of improper influence." In *Corboy*, we concluded that an attorney's motives in making a gift or loan to a judge are irrelevant in determining whether he is guilty of misconduct since "even if well-intended [the gifts or loans] are simply too susceptible to abuse, and too prone to creating an appearance of impropriety." (*Corboy*, 124 Ill. 2d at 39). We adhere to that position here and reject respondent's contention that the sole purpose of the rule is to prohibit only those gifts or loans intended to influence a judge.

Respondent also challenges the Hearing and Review Boards' conclusion that he violated DR 1—102(A)(5) by engaging in conduct prejudicial to the administration of justice. Respondent contends that, because his client deserved to win on the merits, the posting of collateral for Holzer's loan was not "prejudicial to the administration of justice." We refuse to read this phrase so narrowly. The administration of justice requires a fair and impartial tribunal. When a party or his attorney performs favors for a judge before whom the attorney or his client is likely to appear, the fairness and impartiality of the tribunal is compromised and the administration of justice is prejudiced. Further, when an attorney arranges for his client to secure a loan for a judge before whom the at-

torney and his client have a case pending, the appearance of impropriety is compounded and the administration of justice is prejudiced. Because respondent's conduct was prejudicial to the administration of justice, we find that he violated DR 1—102(A)(5).

Respondent next challenges the Boards' conclusion that he violated DR 1—102(A)(3) by engaging in illegal conduct involving moral turpitude. Respondent argues that his conduct was not illegal and claims that the report of the hearing panel failed to specify how his conduct was unlawful.

Our examination of the record reveals that the complaint filed against the respondent failed to specify which law or laws respondent is charged with having violated. To be illegal the conduct charged must be in violation of some law in the jurisdiction in which the conduct occurred. Further, the complaint does not identify the conduct of respondent that was unlawful. Before the Hearing Board panel, the Administrator contended that respondent's actions involved moral turpitude; however, the Administrator made no argument that respondent's conduct was illegal. Further, the Administrator, in both his brief to this court and at oral argument, failed to answer respondent's claim that no showing had been made that his conduct was illegal. While we express no opinion on the legality or illegality of respondent's conduct, we do conclude that an essential element of the charge that an attorney violated DR 1—102(A)(3) is that the conduct be illegal. Because the Administrator has not specified either in the complaint, at the hearing, or before this court which law or laws respondent's actions may have violated, we will not speculate on the illegality here. We, therefore, dismiss that portion of the complaint that charges respondent with a violation of DR 1—102(A)(3).

Additionally, respondent argues that he is not guilty of violating DR 1—103(A). At the time of respondent's

misconduct, DR 1—103(A) required a lawyer who possessed unprivileged knowledge of a violation of DR 1—102 to report such knowledge to a tribunal or other authority empowered to investigate or act on the violation. The Administrator has not identified in his complaint the person whose violation of DR 1—102 the respondent had a duty to report. Moreover, the Administrator did not argue before the hearing panel or this court that respondent violated DR 1—103(A). We note parenthetically that respondent in his brief to this court assumed that it was his own misconduct that he is charged with not having reported. The Administrator has not responded to that assumption. Because the Administrator has not alleged in either the complaint, before the hearing panel or here whose misconduct respondent should have reported pursuant to DR 1—103(A), we decline to consider this charge.

Respondent next argues that it was improper to find that he had violated Canon 9, which states "[a] lawyer should avoid even the appearance of impropriety." Respondent points out that the Canons of Ethics are not disciplinary rules and that commentators and courts have either rejected or seriously questioned the use of Canon 9 as an independent basis for discipline. See, *e.g.*, Annotated Code of Professional Responsibility Canon 9, at 398-99 (American Bar Foundation 1979); ABA Committee on Ethics and Professional Responsibility, Formal Op. 342 (1975); see also *International Electronics Corp. v. Flanzer* (2d Cir. 1975), 527 F.2d 1288, 1295.

We believe that Canon 9 is not a standard of discipline in itself but expresses the policy considerations underlying the disciplinary rules contained within Canon 9. While respondent's conduct was not only improper but also created the appearance of impropriety, we nevertheless conclude that Canon 9 does not afford a basis for imposing sanctions independent of an allegation and

proof of a violation of one of the disciplinary rules contained within the canon.

Finally, respondent argues that the recommended sanction of disbarment is unduly harsh. While this court strives for uniformity in attorney discipline (*In re Saladino* (1978), 71 Ill. 2d 263, 275; *In re Andros* (1976), 64 Ill. 2d 419, 425), we recognize that each case is unique and must be decided on its own specific facts (*In re Mason* (1988), 122 Ill. 2d 163, 170). In determining the appropriate sanction, this court necessarily considers all of the aggravating and mitigating circumstances relevant to the case.

Respondent asks that we consider his mental state as a mitigating factor when determining the discipline to be imposed. Again, respondent claims that he had no corrupt motive in arranging the loan for Holzer, and that he did not realize the transaction was improper. We acknowledge that respondent's mental state is an appropriate factor to consider in deciding the nature and severity of the sanction. (*In re Ketchum* (1988), 124 Ill. 2d 50, 57-58; *In re Clayter* (1980), 78 Ill. 2d 276, 283.) Because the record in this case supports the Hearing Board's findings that respondent's motive in arranging the loan was to influence Holzer's decision in the case pending before him, and that respondent knew his conduct was unethical, respondent's mental state cannot be considered in mitigation.

Respondent also points to the "staleness" of the charge and his long, otherwise unblemished career as mitigating factors. Because the Administrator's delay in filing the complaint was due to the concealment of the violation, we do not consider the "staleness" of the charge to be a mitigating circumstance. Further, while the court has in the past considered the length of time an attorney has practiced and the lack of previous misconduct in determining an appropriate sanction (*In re*

*Williams* (1986), 111 Ill. 2d 105, 117; *In re Lenz* (1985), 108 Ill. 2d 445, 453), we have also held that where an ethical violation is of a sufficiently serious character, such as that considered here, a single act of misconduct may warrant disbarment (see *In re Rosenthal* (1978), 73 Ill. 2d 46). We note in mitigation that respondent offered the testimony of eight character witnesses who attested to respondent's reputation for honesty and integrity.

In aggravation, we repeat that the Hearing Board found, and we agree, that respondent's motive in arranging the loan for Holzer was to curry favor with the judge. Thus, respondent's case differs significantly from the cases consolidated in *In re Corboy* (1988), 124 Ill. 2d 29, in which there were no findings of intent to influence a judge. *Corboy*, 124 Ill. 2d at 39, 48, 49.

Respondent further argues that the validity of the Board's finding on his motive is questionable in light of the Board's conclusion that he did not violate DR 7—110(A) (giving or lending a thing of value to a judge). We believe that the Hearing Board's finding that respondent did not violate DR 7—110(A) signifies only that the Board concluded that respondent's actions in arranging the loan and using his client to post the collateral were sufficiently indirect to constitute a violation of the circumvention rule rather than a direct violation of DR 7—110(A). In either event, we consider that respondent's actions in arranging the loan for Holzer constituted the giving of a thing of value to a judge, and that respondent's conduct also violated DR 7—110(A). See *In re Ketchum* (1988), 124 Ill. 2d 50, 60.

Respondent's misconduct was further aggravated by the fact that respondent, who knew that Holzer was asking him to do something improper, decided to comply with the judge's request only after thinking about it for some time. The arrangements for the loan extended over a period of several days, during which time respondent

had ample opportunity to reconsider his decision. Thus, respondent's misconduct was not a "quick and unreasoned failure of judgment, but rather was a deliberate course of conduct." *In re Thebeau* (1986), 111 Ill. 2d 251, 256. *Cf. In re Karzov* (1988), 126 Ill. 2d 33 (attorney suspended for 18 months after going to bank, withdrawing money, and delivering it to Holzer all on the same afternoon he was asked to do so by the judge).

We also note in aggravation that, at the time of the misconduct, respondent and his client had a case pending before Holzer. Further, the loan was arranged during the week immediately prior to Holzer's ruling on an important motion in the case. We do not suggest that this factor is a prerequisite for finding a violation of the rule prohibiting gifts or loans to judges or the rule against its circumvention. The presence of a pending case is, however, an aggravating factor that may be taken into consideration in determining an appropriate sanction.

Finally, respondent's misconduct was aggravated by respondent's having involved his own client in the unethical scheme. We find it disturbing that respondent chose to violate disciplinary rules by utilizing in the scheme the person whose interests he was ethically bound to protect.

Because of the serious nature of the ethical violations committed by respondent, as well as the circumstances surrounding their commission, we conclude that the appropriate sanction is disbarment.

*Respondent disbarred.*

JUSTICE STAMOS took no part in the consideration or decision of this case.